UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHONECA DAVIS, DAWUD EUDELLE, JACLYN            08 Civ. 1859 (PKC)
PAGNOTTA, and DAVID POMALES, individually
and on behalf of all others similarly situated, and

                                                ECF CASE

KENNETH FINGERMAN,

                        Plaintiffs,

            - against -

ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch, Abercrombie,
and Hollister and Ruehl,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


==========================================================
MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' MOTION
FOR PRELIMINARY CERTIFICATION PURSUANT TO THE FAIR
LABOR STANDARDS ACT, FOR COURT-FACILITATED NOTICE TO
SIMILARLY SITUATED PERSONS, AND FOR EXPEDITED DISCOVERY
==========================================================


                                    VLADECK, WALDMAN, ELIAS &
                                        ENGELHARD, P.C.
                                    Attorneys for Plaintiff
                                    1501 Broadway, Suite 800
                                    New York, New York 10036
                                    (212) 403-7300


Of counsel:
            Debra L. Raskin
            Maia Goodell


253112 v1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 3

ARGUMENT .................................................................................................................... 6

    I.      PRELIMINARY COLLECTIVE ACTION CERTIFICATION IS
           APPROPRIATE .............................................................................................. 6

           A.     The FLSA's Two-Stage Certification Process ........................................... 7

           B.     The Standard for Conditional Collective Action Certification and Court-
                  Facilitated Notice .................................................................................. 8

           C.     Plaintiffs Easily Meet the Similarly Situated Standard ........................... 10

                 1.     Individual Defenses Do Not Defeat Preliminary Certification ..... 11

                 2.     Agents' Job Duties Were Similar for All Members of the Proposed
                       Collective Action ...................................................................... 12

                 3.     All Potential Collective Action Members Were Wrongfully
                       Treated As Exempt .................................................................... 13

    II.     THIS CASE IS APPROPRIATE FOR COURT-FACILITATED NOTICE ....... 14

           A.     Notice Will Promote the Efficient Resolution of the FLSA Claims ........ 14

           B.     Because Class Plaintiffs Have Alleged Willful FLSA Violations, Notice
                  for a Three Year Period Is Warranted .................................................... 15

            C.     The Proposed Notice ............................................................................ 17

    III.    LIMITED EXPEDITED DISCOVERY IS APPROPRIATE ............................. 17

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

Allen v. Bd. of Pub. Educ. for Bibb Cty.,
    495 F.3d 1306 (11th Cir. 2007) ................................................................ 16

Barrus v. Dick's Sporting Goods, Inc.,
    2006 WL 3373117 (W.D.N.Y. Nov. 3, 2006) ............................................. 8, 9

Bowens v. Atlantic Maint. Corp.,
    546 F. Supp. 2d 55 (E.D.N.Y. 2008) ...................................................... 9, 12

Braunstein v. E. Photographic Labs., Inc.,
    600 F.2d 335 (2d Cir. 1978) ...................................................................... 7

Brennan v. Gen. Motors Acceptance Corp.,
    495 F.2d 825 (5th Cir. 1983) .................................................................... 17

Christensen v. Harris Cty.,
    529 U.S. 576 (2000) ................................................................................ 14

Fasanelli v. Heartland Brewery, Inc.,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007) .................................................. passim

Foster v. Food Emporium,
    No. 99-3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) .......................... 10

Gjurovich v. Emmanuel's Marketplace, Inc.,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003) ....................................................... 8

Green v. Abercrombie & Fitch,
    No. 06-cv-12879-PKC (S.D.N.Y. filed Nov. 2, 2006) ............................. 6, 15

Hipp v. Liberty Nat'l Life Ins. Co.,
    252 F.3d 1208 (11th Cir. 2001) .................................................................. 7

Hirschfeld v. Stone,
    193 F.R.D. 175 (S.D.N.Y. 2000) .............................................................. 11

Hoffmann-La Roche Inc. v. Sperling,
    493 U.S. 165 (1989) .............................................................................. passim

Hoffmann v. Sbarro, Inc.,
    982 F. Supp. 249 (S.D.N.Y. 1997) ..................................................... 6, 7, 14

Iglesias-Mendoza v. LaBelle Farm, Inc.,
    239 F.R.D. 363 (S.D.N.Y. 2007)............................................................................passim

Jackson v. N.Y. Tel. Co.,
    163 F.R.D. 429 (S.D.N.Y. 1995) ................................................................................. 8

Kalish v. High Tech Inst., Inc.,
    No. Civ. 04-144 (JRT/JSM)2005 WL 1073645 (D. Minn. Apr. 22, 2005) ..................... 9

Krueger v. N.Y. Tel. Co.,
    No. 93 Civ. 0178-79, 1993 WL. 276058 (S.D.N.Y. July 21, 1993) ................................ 10

LeGrand v. Educ. Mgmt. Corp.,
    No. 03 Civ. 9798 (HB)(HBP), 2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004)................... 9

Lee v. ABC Carpet & Home,
    236 F.R.D. 193 (S.D.N.Y.)...................................................................................... 8, 11

Lynch v. U.S. Automobile Ass'n,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)....................................................................passim

Masson v. Ecolab, Inc.,
    No. 04-Civ-4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ................. 9, 10

Mazur v. Olek Lejbzon & Co.,
    No. 05 Civ. 2194 (RMB)(DF), 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) ........... 9, 10

McLaughlin v. Richland Shoe Co.,
    486 U.S. 128 (1988)..................................................................................................... 16

Mooney v. Aramco Services Co.,
    54 F.3d 1207 (5th Cir. 1995)......................................................................................... 7

Patton v. Thomson Corp.,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ............................................................7, 8, 10, 11

Realite v. Ark Restaurants Corp.,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) .............................................................................. 8

Redman v. U.S. West  Bus. Res., Inc.,
    153 F.3d 691 (8th Cir. 1998)........................................................................................ 15

Reyes v. Carnival Corp.,
    No. 04-21861-CIV, 2005 WL. 4891058 (S.D. Fla. May 25, 2005) ................................. 3

Roebuck v. Hudson Valley Farms, Inc.,
    239 F. Supp. 2d 234 (N.D.N.Y. 2002) .......................................................................... 9

Scholtisek v. The Eldre Corp.,
    229 F.R.D. 381 (W.D.N.Y. 2005) ............................................................. 7, 8

Schwed v. Gen. Elec. Co.,
    159 F.R.D. 373 (N.D.N.Y. 1995) ................................................................ 7

Scott v. Heartland Home Fin., Inc.,
    No. 1:05-cv-2812-TWT, 2006 WL 1209813 (N.D. Ga. May 3, 2006) .................... 10, 11

Severtson v. Phillips Beverage Co.,
    141 F.R.D. 276 (D. Minn. 1992) ............................................................. 9, 10

Sipas v. Sammy's Fishbox, Inc.,
    No. 05 Civ. 103189 (PAC), 2006 WL 1084556 (S.D.N.Y Apr. 24, 2006) ...................... 9

Trans World Airlines, Inc. v. Thurston,
    469 U.S. 111 (1985) ............................................................................ 16

Trezvant v. Fidelity Employer Services Corp.,
    434 F. Supp. 2d 40 (D. Mass. 2006) ........................................................ 9, 12

In re Visa Check/MasterMoney Antitrust Litigation,
    280 F.3d 124 (2d Cir. 2001) .................................................................. 11

Waste Mgmt. Holdings, Inc. v. Mowbray,
    208 F.3d 288 (1st Cir. 2000) ................................................................. 12

Young v. Cooiper Cameron Corp.,
    229 F.R.D. 50 (S.D.N.Y. 2005) ............................................................. 9, 10

## STATUTES AND REGULATIONS

42 U.S.C. § 1981 .................................................................................. 3

29 U.S.C. § 216 (b) ........................................................................... passim

29 U.S.C. § 255(a) .............................................................................. 16

29 C.F.R. § 541.200(a)(3) ....................................................................... 13

Federal Rule of Civil Procedure 23(a)(3) ..................................................... 1, 10

N.Y. Labor Law §§ 650 et seq .................................................................... 3

Title VII, 42 U.S.C. § 2000e et seq ............................................................. 3

<u>PRELIMINARY STATEMENT</u>

Class plaintiffs Shoneca Davis, Dawud Eudelle, JacLyn Pagnotta, and David Pomales (collectively "class plaintiffs") respectfully petition this Court pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b): (1) for preliminary certification of their FLSA claims as a collective action; (2) for Court-facilitated notice of the FLSA overtime claims; and (3) for expedited discovery of names and contact information for potential collective action members.

This Court has established a two-stage certification process for FLSA claims.  In the initial, preliminary certification stage, the Court determines whether it is appropriate to send notice to potential collective action members that allows them to decide whether to opt in to the lawsuit.  <u>Lynch v. U.S. Automobile Ass'n</u>, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007); <u>Fasanelli v. Heartland Brewery, Inc.</u>, 516 F. Supp. 2d 317, 320-21 (S.D.N.Y. 2007).  "[C]ourt-supervised notice is the preferred method for managing the notification process. . . ."  <u>Lynch</u>, 491 F. Supp. 2d at 367.  Because the statute of limitations is not tolled until each individual plaintiff files a signed consent form, this Court has recognized that it is important that such notice be sent without delay. <u>Id.</u>  Preliminary certification requires only a "modest factual showing" that there are potential opt-in plaintiffs similarly situated to the named plaintiffs. <u>Id.</u>  (citing <u>Iglesias-Mendoza v. LaBelle Farm, Inc.</u>, 239 F.R.D. 363, 367-68 (S.D.N.Y. 2007)).  Class plaintiffs' burden at this stage is "very low," <u>Lynch</u>, 491 F. Supp. 2d at 468, so extensive discovery is not necessary. <u>Id.</u> at 369.[1]

---

[1] Class plaintiffs also bring claims under the New York Labor Law.  Following sufficient discovery, class plaintiffs will petition this Court for certification of a class pursuant to Federal Rule of Civil Procedure 23(a)(3) for those claims.  Thus, Rule 23 class certification is <u>not</u> at issue in the instant motion.

In the accompanying affirmations, class plaintiffs establish that they were non-managerial employees assigned to loss prevention in defendants' New York and New Jersey stores.[2]  They had the titles of either "Loss Prevention Supervisor" or "Loss Prevention Agent," but were assigned similar, non-supervisory duties in either instance.  When first hired, they were treated as exempt from the FLSA overtime requirements ("exempt"), but were assigned duties inconsistent with exempt status.  In the fall of 2006, with no change in class plaintiffs' duties, defendants began to treat all of them as hourly employees subject to the FLSA ("non-exempt").  From the fall of 2006 through January 2007, class plaintiffs continued to work overtime, but regional managers directed all loss prevention employees not to record hours worked in excess of forty per week, so class plaintiffs were not paid for their overtime work.

Defendants have over thirty stores in New York and another thirty in New Jersey. (See Declaration of Debra L. Raskin ("Raskin Decl.") Ex. 1 (web page store listings)) Class plaintiffs Eudelle, Pagnotta, and Pomales worked in defendants' Manhattan stores at the South Street Seaport and Fifth Avenue; plaintiff Davis worked at a set of "field" stores in New Jersey until she was transferred to the Fifth Avenue location in 2007.

Class plaintiffs make the initial factual showing that, for overtime pay purposes, all non-managerial loss prevention employees in defendants' New York and New Jersey stores were subject to the same pay policies and assigned substantially the same duties. Nothing further is required for the conditional certification, court-facilitated notice, and limited expedited discovery that class plaintiffs request.

---

[2] Defendants Abercrombie & Fitch Co.; Abercrombie & Fitch Stores, Inc.; and Abercrombie & Fitch Trading Co., d/b/a Abercrombie and Fitch, Abercrombie, and Hollister and Ruehl are referred to collectively as "Abercrombie" or "defendants."

BACKGROUND

Procedural Background

      Class plaintiffs brought this action on February 25, 2008,[3] inter alia to remedy defendants' violations of the FLSA and the New York Minimum Wage Act ("NYMWA"), and/or the N.Y. Labor Law §§ 650 et seq. with respect to overtime practices (collectively the "overtime claims"). Opt-in Plaintiff Shane Miller ("Miller") filed a Notice of Consent to Sue on May 1, 2008. Defendants served Rule 68 offers of judgment for the Shoneca Davis ("Davis"), Dawud Eudelle ("Eudelle"), JacLyn Pagnotta ("Pagnotta") and David Pomales ("Pomales") on April 15, 2008 and for Miller on May 6, 2008. None of the class plaintiffs accepted; Miller accepted on May 13, 2008.

      As discussed at the initial pretrial conference on May 9, 2008 and pursuant to the Court's Order of that date, as modified by the Stipulation and Order of June 3, 2008, defendants will move to dismiss the overtime claims on the basis that the Rule 68 offers purportedly render them moot. As class plaintiffs will demonstrate in the briefing scheduled for September 1, 2008, the proposed motion is without merit for several reasons, including because class plaintiffs are entitled to relief beyond that which defendants offered.[4]

---

[3] Class plaintiffs and one individual plaintiff, Kenneth Fingerman, also alleged discrimination and retaliation claims under 42 U.S.C. § 1981 and various state and city equal employment laws. An Amended Complaint was filed on June 16, 2008, after the EEOC issued Notices of Right to Sue; the Amended Complaint added discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e et seq., for certain plaintiffs. The amendment did not affect the overtime claims at issue in this motion.

[4] See, e.g., Reyes v. Carnival Corp., No. 04-21861-CIV, 2005 WL 4891058, at *3 (S.D. Fla. May 25, 2005).

Plaintiffs' and Potential Collective Action Members' Similar Job Duties

Loss Prevention Agents and Loss Prevention "Supervisors" (collectively "Agents") are non-managerial employees without significant discretion in their work. During the time period at issue (and indeed still today), Abercrombie required its employees, including its loss prevention employees, to follow uniform policies and procedures in all of its stores, so Agents, including class plaintiffs, all performed substantially the same duties in substantially the same way. (Eudelle Aff. ¶ 13; Pomales Aff. ¶¶ 8, 9, 11; Davis Aff. ¶¶ 16, 17; Pagnotta Aff. ¶¶ 10, 14, 15)[5] All Agents followed a company-wide Loss Prevention Manual in performing every aspect of their work. (Pagnotta Aff. ¶ 10; Pomales Aff. ¶ 8) The Loss Prevention Manual included checklists of duties to be accomplished daily and outlines for Agents to use in giving training to store associates, that is, the retail salespeople. (Id.)

Abercrombie runs retail clothing stores in shopping malls and similar venues throughout New Jersey, upstate New York, Long Island, and in New York City outside of Manhattan. These stores are referred to as "field stores." (Pagnotta Aff. ¶ 14) Class plaintiff Davis and opt-in plaintiff Miller worked in such field stores during the time frame relevant to this motion. (Davis Aff. ¶ 3) Abercrombie also has two large stores in Manhattan: a Fifth Avenue location and a South Street Seaport location ("Manhattan stores"). Both the Manhattan stores and the field stores are part of what Abercrombie administers as a single "New York/New Jersey Region." (Eudelle Aff. ¶ 5 & Ex. 1) Class plaintiffs Eudelle, Pagnotta, and Pomales worked in both of the Manhattan stores during the time frame relevant to this litigation. (Eudelle Aff. ¶ 2; Pagnotta Aff. ¶ 2; Pomales Aff. ¶ 2) Although the Manhattan stores differed in having a larger staff and on-site managerial loss prevention personnel and in being operated 24 hours

---

[5] The Affirmations of class plaintiffs Eudelle, Pomales, Davis, and Pagnotta in support of this motion are referred to herein as "Eudelle Aff.," "Pomales Aff.," "Davis Aff." and "Pagnotta Aff."

per day, the duties performed by loss prevention personnel there were subject to the same store-wide policies, including the Loss Prevention Manual, checklists, and training outlines. (Eudelle Aff. ¶ 13; Pomales Aff. ¶¶ 8, 9, 11; Davis Aff. ¶¶ 16, 17; Pagnotta Aff. ¶¶ 10, 14, 15)

Employees in both the Manhattan and field stores participated in weekly regional loss prevention conference calls in which the same regional managers gave the Agents direction about how to perform their duties. (Eudelle Aff. ¶ 8; Pomales Aff. ¶ 8; Davis Aff. ¶ 9; Pagnotta Aff. ¶ 14) Indeed employees in the Manhattan stores were sometimes assigned to perform duties in the field stores, and employees were transferred between the Manhattan and field stores. (Pagnotta Aff. ¶ 14; Davis Aff. ¶ 17) Employees in both the Manhattan and field stores were directed by managers to falsify their time records to record only forty hours per week. (Davis Aff. ¶¶ 10, 12; Pagnotta Aff. ¶¶ 7-8)

Abercrombie appears to have cycled through two different overtime practices prior to February 2007, both illegal. First, Abercrombie misclassified all Loss Prevention Supervisors and Loss Prevention Agents as "exempt," a classification inconsistent with the duties they were assigned. Second, in about November of 2006, Abercrombie changed the status of the Agents without changing their duties. (Pagnotta Aff. ¶ 3; Davis Aff. ¶ 2) Although Abercrombie purportedly began to pay overtime then, its managers began or continued to direct the Agents not to record hours in excess of forty per week and, in some instances, altered time records to reduce the documented hours so that overtime would not be paid. (See Davis Aff. ¶¶ 10, 12; Pagnotta Aff. ¶¶ 7-8) Some employees were told not to record any hours (Pagnotta Aff. ¶ 6), while some were directed to report falsely low hours (Davis Aff. ¶ 12-13 & Ex. 1), but in both instances Abercrombie's management implemented a policy of directing employees not to record hours worked in excess of forty per week.

In a prior case, <u>Green v. Abercrombie & Fitch</u>, No. 06-cv-12879-PKC (S.D.N.Y. filed Nov. 2, 2006), the plaintiffs claimed similar overtime violations for Abercrombie loss prevention personnel on a nation-wide basis. <u>Green</u> was resolved in March 2007 prior to class certification, so the dismissal of that action affects only the named plaintiffs in that case.

<u>ARGUMENT</u>

I.    <u>PRELIMINARY COLLECTIVE ACTION CERTIFICATION IS APPROPRIATE</u>

The FLSA provides for collective actions to remedy violations of its provisions:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216 (b). The collective action procedure allows for efficient adjudication of similar claims, so similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. <u>See</u> <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989).

In order to participate in a collective action, an employee must "opt in," meaning the employee must file a consent in writing to join the suit. <u>Id</u>. 493 U.S. at 168 (citing 29 U.S.C. § 216(b)(1982 ed.)). The statute of limitations runs on each employee's claim until his or her individual opt-in form is filed with the court. <u>Hoffmann v. Sbarro, Inc.</u>, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). To serve the "broad remedial goal" of the FLSA, courts can order notice to similarly situated employees to inform them of this opportunity to "opt in" the case. <u>Hoffmann-La Roche</u>, 493 U.S. at 173; <u>Braunstein v. E. Photographic Labs., Inc.</u>, 600 F.2d 335, 336 (2d Cir. 1978).

Court-supervised notice is the preferred method for managing the notification process for several reasons: it avoids "multiplicity of duplicative suits"; it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations. Hoffmann-La Roche, 493 U.S. at 171-73; Hoffmann, 982 F. Supp. at 260. When determining whether to grant a motion for conditional certification and judicially supervised notice, the "courts should be mindful" that providing such notice is consistent with the remedial purpose of the FLSA. Iglesias-Mendoza, 239 F.R.D. at 367 (citing Braunstein, 600 F.2d at 336).

A.     The FLSA's Two-Stage Certification Process

Like other courts, federal district courts in New York have adopted a two-step approach to determine whether a case should be certified as a collective action. See Lynch, 491 F. Supp. 2d at 367-68; Fasanelli, 516 F. Supp. 2d at 321; Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266-68 (E.D.N.Y. 2005); Scholtisek v. The Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005); Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995); see also Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995) (referring to two-step approach as an "effective tool"); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001).

In the notice stage, the court determines, based simply on the pleadings and any affidavits plaintiffs submit, whether the plaintiffs and potential opt-ins are sufficiently similarly situated for the court to issue notice and allow the case to proceed as a collective action through discovery. Once the court determines that for the purposes of authorizing notice, potential opt-in plaintiffs may be similarly situated, the court conditionally certifies the collective action. The named plaintiffs then send court-approved notice to potential class members who may then elect, pursuant to section 216(b), to "opt in" by filing written consents with the court.   Lynch, 491 F.

Supp. 2d at 368; Fasanelli, 516 F. Supp. 2d at 321; Iglesias-Mendoza, 239 F.R.D. at 366; Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).  "Once notice is accomplished, the action proceeds as a collective action throughout the discovery process." Lynch, 491 F. Supp. 2d at 368 (citing Lee, 236 F.R.D. at 197).

At the second step, typically on a motion for decertification, "the court undertakes a more stringent factual determination as to whether members of the collective are, in fact, similarly situated." Lynch, 491 F. Supp. 2d at 368 (citing Iglesias-Mendoza, 239 F.R.D. at 367); see Fasanelli, 516 F. Supp. 2d at 321; Lee, 236 F.R.D. at 197. Under this two-step process, the initial conditional certification determination is merely a preliminary finding. Lee, 236 F.R.D. at 197; Barrus v. Dick's Sporting Goods, Inc., 2006 WL 3373117, at * 2 (W.D.N.Y. Nov. 3, 2006); Patton, 364 F. Supp. 2d at 267. If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice. Lynch, 491 F. Supp. 2d at 368; Fasanelli, 516 F. Supp. 2d at 321 (citing Scholtisek, 229 F.R.D. at 387); Lee, 236 F.R.D. at 197; see Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 104 n.1 (S.D.N.Y. 2003) (citing Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)); Jackson v. N.Y. Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

B.    The Standard for Conditional Collective Action
       Certification and Court-Facilitated Notice

The burden for demonstrating that potential plaintiffs are similarly situated is "very low at the notice stage." Lynch, 491 F. Supp. 2d at 368.  Plaintiffs need make only a "modest factual showing" that plaintiff and potential collective action members were similarly situated, such as being subject to a common policy or plan that violated the law.  Bowens v. Atlantic Maint. Corp., 546 F. Supp. 2d 55, 82-84 (E.D.N.Y. 2008); Iglesias-Mendoza, 239

F.R.D. at 368 (concluding that, through their allegations of common wage and overtime practices that violate the FLSA, the plaintiffs had "easily made the modest showing that is required of them at this preliminary stage").

The required evidentiary showing at this stage is correspondingly low. See, e.g., Bowens, 546 F. Supp. 2d at 82-84 (authorizing notice based on lone plaintiff's declaration); Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 103189 (PAC), 2006 WL 1084556, at *2 (S.D.N.Y Apr. 24, 2006) (three affidavits and the contents of the complaint); Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54-55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all had some job and were all classified as exempt at over 108 facilities in 21 states); Masson v. Ecolab, Inc., No. 04-civ-4488 (MBM), 2005 WL 2000133, at * 14 (S.D.N.Y. Aug. 17, 2005) (three affidavits and defendant's admission that its actions represent a company-wide policy); Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194 (RMB)(DF), 2005 WL 3240472, at * 4 (S.D.N.Y. Nov. 30, 2005) (three affidavits sufficient for notice to employees in nine job classifications, who worked for four different corporations); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238-39 (N.D.N.Y. 2002) (three affidavits); LeGrand v. Educ. Mgmt. Corp., No. 03 Civ. 9798 (HB)(HBP) 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs who were told by management of nationwide company that employees were required to work over forty hours per week without overtime pay).

At the preliminary certification stage of an FLSA collective action, the court does not resolve factual disputes or make credibility determinations Lynch, 491 F. Supp. 2d at 368; Barrus, 2006 WL 3373117, at *4 (citing Trezvant v. Fidelity Employer Services Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); Kalish v. High Tech Inst., Inc., No. Civ. 04-144 (JRT/JSM), 2005 WL 1073645, at *2 (D. Minn. Apr. 22, 2005) (citing Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992)). Instead, fact questions and credibility issues are

resolved in favor of the moving party. <u>See</u> <u>Scott v. Heartland Home Fin., Inc.</u>, No. 1:05-cv-2812-TWT, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006).  At this stage, the courts do not weigh the merits of the underlying claims at all.  <u>Lynch</u>, 491 F. Supp. 2d at 368; <u>Young</u>, 229 F.R.D. at 54 (S.D.N.Y. 2005) ("the focus . . . is not on whether there has been a violation of the law but rather on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that the law has been violated."); <u>Mazur</u>, 2005 WL 3240472, at *4 ("plaintiff need not show an actual violation of the law . . ."); <u>Krueger v. N.Y. Tel. Co.</u>, No. 93 Civ. 0178-79, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out <u>not</u> to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.").

The standard for class certification under Federal Rule of Civil Procedure 23 is not relevant to an FLSA collective action. Unlike Rule 23, Section 216(b) requires no showing of numerosity, typicality, commonality, or representativeness. <u>Iglesias-Mendoza</u>, 239 F.R.D. at 368 (citing <u>Young</u>, 229 F.R.D. at 54); <u>Masson</u>, 2005 WL 2000133, at *13 (citing <u>Foster v. Food Emporium</u>, No. 99-3860, 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)). As a result, the FLSA standard for authorizing notice to similarly situated workers is much lower than under Rule 23. <u>Patton</u>, 364 F. Supp. 2d at 267 (plaintiffs' burden under Section 216(b) "is significantly less exacting than the matters that must be demonstrated to sustain certification of a class under Federal Rule of Civil Procedure 23").

C.    Plaintiffs Easily Meet the Similarly Situated Standard

Courts in this Circuit have authorized Section 216(b) notice upon a simple showing that employees other than the named plaintiffs may have been subjected to the employer's violations of the FLSA.  <u>Fasanelli</u>, 516 F. Supp. 2d at 321-22; <u>Patton</u>, 364 F. Supp.

2d at 267; <u>Lee</u>, 236 F.R.D. at 198.  Class plaintiffs have more than met the "modest factual showing" required to demonstrate that, until November 2006, all potential plaintiffs were misclassified as "exempt."  After November 2006, all potential plaintiffs were subject to Abercrombie's region-wide policy of directing Agents not to report hours worked over forty.

In the Rule 23 context, courts have noted that the risk of mootness also weighs in favor of certifying the class.  <u>Hirschfeld v. Stone</u>, 193 F.R.D. 175, 184 (S.D.N.Y. 2000) (collecting cases).  Similarly here, preliminary certification will provide both fairness and efficiency by allowing in a single action at least initial resolution of the issues associated with Abercrombie's overtime practices instead of proceeding by piecemeal judgment in favor of individual plaintiffs.

1.    Individual Defenses Do Not Defeat Preliminary Certification

In their May 7, 2008 letter to the Court ("5/7/08 Letter"), defendants argue without citation that "individualized defenses" preclude preliminary certification.[6]  Defendants' contention fails both as a matter of law and as a matter of fact.  First, "individualized defenses" do not preclude preliminary FLSA collective action certification.  <u>Scott</u>, 2006 WL 1209813, at *3 ("[V]ariations in specific duties, job locations, working hours, <u>or the availability of various defenses</u> are examples of factual issues that are not considered at this stage." (emphasis added)).  Even in the more stringent context of Rule 23 class certification, the Second Circuit has expressly recognized that "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones'" so as to make class certification inappropriate. <u>In re Visa Check/MasterMoney Antitrust</u>

---

[6] A copy of the 05/07/08 Letter is attached as Raskin Decl. Ex. 2.

Litigation, 280 F.3d 124, 139 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)).

Second, when the facts are considered in the light most favorable to the plaintiffs, as is required at this stage, plaintiffs have without question demonstrated that they are similarly situated to the proposed collective action members. Defendants claim that they had "procedures" for recording work time that some named plaintiffs followed while others did not. (5/7/08 Letter at 2, Raskin Decl. Ex. 2). If believed, class plaintiffs' evidence shows that it was Abercrombie procedure to direct Agents not to record work time accurately. As one court recently observed, "It would be highly unusual for a defendant who did require its employees to work off the clock to keep records of that time." Bowens, 546 F. Supp. 2d at 83. Thus, the factual dispute is a common one to members of the proposed collective action. In any event, such fine-tuned factual disputes are not resolved at this stage; if discovery reveals the need for further refinement, the Court may later divide the class into subclasses. Lynch, 491 F. Supp. 2d at 369 (citing Iglesias-Mendoza, 239 F.R.D. at 369).

2.      Agents' Job Duties Were Similar for All Members
        of the Proposed Collective Action

Defendants also argue that "a dissimilarity of job duties . . . prevents preliminary certification." (5/7/08 Letter at 2, Raskin Decl. Ex. 2). This argument also fails both legally and factually. At this stage any such factual differences would not defeat conditional collective action certification. See Iglesias-Mendoza, 239 F.R.D. at 368 ("For the moment, the factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA."); Trezvant, 434 F. Supp. 2d at 48 ("Different job titles or positions do not preclude a finding that plaintiffs are 'similarly situated'").

Moreover, class plaintiffs have introduced far more than the modest factual showing required to demonstrate that no sub-groups of Agents were exempt and that all Agents were similarly situated since they were assigned duties inconsistent with any FLSA exemptions. Defendants' factual disagreements with plaintiffs' evidence is insufficient to defeat preliminary certification. Fasanelli, 516 F. Supp. 2d at 322 ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether Defendants maintain an [illegal policy] . . . that inquiry is misplaced as those issues go to the merits of the case.") Thus, at this stage, preliminary certification is appropriate.

> 3.    All Potential Collective Action Members
>        Were Wrongfully Treated As Exempt

Defendants suggest that certain plaintiffs were appropriately treated as exempt. (5/7/08 Letter at 2, Raskin Decl. Ex. 2)  Abercrombie relies on a Department of Labor Opinion Letter, FLSA 2006-30 ("DOL Letter"),[7] which states that Loss Prevention Managers responsible for implementing a loss prevention program in an employer's department stores qualified for the administrative exemption under the FLSA.  The Loss Prevention Managers at issue in the DOL Letter often supervised Loss Prevention Associates. This argument is misplaced because it inappropriately goes to the merits of plaintiffs' claims, see Lynch, 491 F. Supp. 2d at 368, and is in any case without merit.

To qualify for the administrative exemption, an employee must have his or her primary duty "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).  Plaintiffs have made more than made the required modest factual showing that all Agents were similarly situated and that none had the discretion or ability to exercise independent judgment consistent with exempt status.

---

[7] A copy of the DOL Letter is attached as Exhibit 3 to the Raskin Decl.

Moreover, the job described in the DOL Letter is analogous to that of the Abercrombie managers responsible for the Manhattan stores and the regional managers; plaintiffs and collective action members were the employees those managers supervised. The duties of class plaintiffs and potential opt-in plaintiffs were performed in accordance with fixed checklists and manuals that the Agents did not have discretion to deviate from. No Agents supervised any other employees. Unlike the managers described in the DOL letter, the Agents were not permitted to take steps to solve problems, to discipline employees, to allocate resources, or to develop store-specific programs without manager approval. (See Pagnotta Aff. ¶¶ 10-13; Pomales Decl ¶¶ 8-10; Davis Aff. ¶¶ 14-15; Eudelle Aff. ¶¶ 11-12) Further, the DOL Letter is not entitled to deference, Christensen v. Harris Cty., 529 U.S. 576, 587 (2000), so this Court is required to evaluate independently whether the collective action members' job duties were consistent with exempt status. As extensive authority establishes, such factual inquiry is best suited to resolution in the second stage of the standard two-step FLSA certification process.

II.    THIS CASE IS APPROPRIATE FOR COURT-FACILITATED NOTICE

   A.    Notice Will Promote the Efficient Resolution of the FLSA Claims

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170. District courts are encouraged to become involved in the notice process early, to insure "timely, accurate, and informative" notice and to help maintain control of the litigation. Id. at 171-72. Court-approved notice to potential plaintiffs in FLSA collective actions is proper in appropriate cases. Id. at 169. This is such a case.

First and foremost, "[p]rompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations."

Lynch, 491 F. Supp. 2d at 371; Hoffmann, 982 F. Supp. at 260; see Redman v. U.S. West Bus.

Res., Inc., 153 F.3d 691, 695 (8th Cir. 1998) ) (finding plaintiffs' claims untimely).  As this Court

recently explained:

> Unlike Rule 23 class actions, the statute of limitations for those
> who have not filed Consent Forms is not tolled by the
> commencement of this action.  . . . . Thus, every day that passes is
> a day of damages each potential opt-in plaintiff will be unable to
> recover. Court-facilitated notice will prevent the continued erosion
> of these claims.

Lynch, 491 F. Supp. 2d at 371 (citations omitted).

Because identical issues of law and fact exist among all of Abercrombie's Agents,

addressing their overtime claims in one action conserves judicial resources by resolving issues

collectively at least through the discovery phase. See Hoffmann-La Roche, 493 U.S. at 170.

"Collective adjudication will avoid the proliferation of individual lawsuits that could result in

disparate rulings and wasting of judicial and party resources.  Requiring [class plaintiffs] and

opt-ins to file separate cases in multiple federal district courts would not be an economic use of

judicial resources." Lynch, 491 F. Supp. 2d at 371.  In this case, the presence of an earlier

lawsuit challenging many of the same policies, Green v. Abercrombie & Fitch, No. 06-cv-12879-

PKC (S.D.N.Y. filed No. 2, 2006), and the fact that one opt-in plaintiff joined the suit at this

early stage, both demonstrate the potential for repeated individual actions.  The FLSA claims of

Abercrombie's Agents accordingly should be resolved in a single action.  See, e.g., Lynch, 491 F.

Supp. 2d at 371 (additional consent forms establish interest that potential opt-in collective action

members may exist).

> B.  Because Class Plaintiffs Have Alleged Willful FLSA
>     Violations, Notice for a Three Year Period Is Warranted

Actions under the FLSA must be commenced within two years unless they arise

from a willful violation of the statute. 29 U.S.C. §255(a); see McLaughlin v. Richland Shoe Co.,

486 U.S. 128, 129 (1988). Because plaintiffs have alleged that defendants' actions were willful within the meaning of the FLSA, notice should be given to potential class members who worked for defendants within the relevant three year period.[8] See Fasanelli, 516 F. Supp. 2d at 323 (authorizing three years' notice despite defendants' challenge to willfulness in order "to avoid any merit-based determinations at this time"); Iglesias-Mendoza, 239 F.R.D. at 369 (S.D.N.Y. 2007) (where willfulness is disputed, three year limitations period is proper for conditional class certification).

A violation of the FLSA is willful if the employer either knew or showed reckless disregard of whether its conduct was prohibited by that statute. McLaughlin, 486 U.S. at 136 (adopting standard from Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128-29 (1985) (defining willful violations of the Age Discrimination in Employment Act)). Class plaintiffs' declarations attest that Abercrombie management tried to hide the fact that Agents worked overtime; such conduct reflects defendants' awareness that their pay policies were unlawful. See, e.g., Davis Aff. ¶¶ 10, 12 (directing Davis not to submit time sheets reflecting more than forty hours of work per week); Pagnotta Aff. ¶7 (directing Pagnotta to alter time records created by a punch system). Such management-directed manipulations permit, at this stage of the proceedings, the treatment of the alleged violations as willful and the use of a three-year limitations period. See Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1321 (11th Cir. 2007) (finding factual issue as to willfulness and citing the conclusion in Brennan v. Gen. Motors Acceptance Corp., 495 F.2d 825, 827 (5th Cir. 1983), that the "immediate supervsiors pressured employees to understate their hours").

---

[8]     Because the limitations period runs from the date a potential class member files an opt-in notice (see p. 15, supra), the three year period at issue may be slightly different for each opt-in plaintiff.

C.    The Proposed Notice

Attached as Exhibit 1 is class plaintiffs' proposed judicial notice. The proposed notice has been carefully drafted pursuant to the standards articulated by this and other courts. Indeed Exhibit 1 mirrors a notice form that this Court approved in <u>Lynch</u>, 491 F. Supp. 2d at 372, Ex. 1.  As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

III.    <u>LIMITED EXPEDITED DISCOVERY IS APPROPRIATE</u>

As discussed above, all Agents that worked at Abercrombie's stores are similarly situated employees for purposes of the FLSA. Thus, in order to provide potential opt-in plaintiffs with notice of the action as the case law contemplates, class plaintiffs require discovery of the names and contact information for those individuals.  <u>See</u> <u>Hoffmann-La Roche</u>, 493 U.S. at 170; <u>Lynch</u>, 491 F. Supp. 2d at 371. As a result, class plaintiffs respectfully request that in addition to entering an order granting conditional certification and approving the proposed notice, the Court direct defendants to produce the following within ten (10) days of its Order:

> A list, in electronic and importable format, of all persons employed by defendants as Loss Prevention Supervisors or Loss Prevention Agents, in New York or New Jersey, from the present to three years back, including their name, address, telephone number, dates of employment as a Loss Prevention Supervisor or Loss Prevention Agent, location of employment, date of birth, and last four digits of their Social Security number.

<u>See</u> <u>Lynch</u>, 491 F. Supp. 2d at 371-72 (ordering such discovery).

CONCLUSION

For the foregoing reasons, the following relief should be granted:  (1) preliminary certification of the FLSA claims as a collective action; (2) Court-facilitated notice of the FLSA

claims; and (3) expedited discovery of names and contact information for potential collective

action members.

Dated: New York, New York
       July 9, 2008

                           VLADECK, WALDMAN, ELIAS &
                             ENGELHARD, P.C.

                     By:   /s/                 
                         Debra L. Raskin (DR5431)
                         Maia Goodell (MG8905)
                         Attorneys for Plaintiff
                         1501 Broadway, Suite 800
                         New York, New York 10036
                         (212) 403-73000

# EXHIBIT 1

<u>NOTICE OF PENDENCY OF LAWSUIT</u>

TO: ALL PRESENT AND FORMER LOSS PREVENTION AGENTS OR LOSS PREVENTION SUPERVISORS WHO WORKED FOR ABERCROMBIE & FITCH FROM [DATE 3 YEARS PRIOR TO THE MAILING DATE] TO THE PRESENT.

RE: FAIR LABOR STANDARDS ACT OVERTIME LAWSUIT FILED AGAINST ABERCROMBIE & FITCH

INTRODUCTION

The purpose of this Notice is to inform you of a collective action lawsuit in which you are potentially "similarly situated" to named plaintiffs Shoneca Davis, Dawud Eudelle, JacLyn Pagnotta, and David Pomales; to advise you of how your rights may be affected by this action; and to inform you of the procedure to make a claim if you choose to do so.

DESCRIPTION OF THE ACTION

On February 25, 2008, an action was filed against Defendants Abercrombie & Fitch Co.; Abercrombie & Fitch Stores, Inc.; Abercrombie & Fitch Trading Co., d/b/a Abercrombie and Fitch, Abercrombie, and Hollister and Ruehl (collectively "Abercrombie" or "defendants") on behalf of named plaintiffs Shoneca Davis, Dawud Eudelle, JacLyn Pagnotta, and David Pomales and all other similarly situated individuals who worked as "Loss Prevention Supervisors" or Loss Prevention Agents for Abercrombie during the past three years (collectively referred to as the "potentially similarly situated group"). Specifically, the action alleges that these individuals are owed overtime pay under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, for hours worked in excess of forty (40) per week. Plaintiff also seeks an additional amount as liquidated damages, as well as attorneys' fees and costs. This litigation is currently in the early pretrial stage.

Abercrombie denies plaintiffs' allegations and maintains that the class plaintiffs and the potentially similarly situated group are either exempt from the overtime provisions of the FLSA or were paid any overtime due.

PERSONS ELIGIBLE TO RECEIVE THIS NOTICE

The United States District Court Southern District of New York has ordered this FLSA Notice be distributed to:

All persons who work or have worked for Abercrombie as a Loss Prevention Supervisor or Loss Prevention Agent in New York or New Jersey stores at any time from [DATE] to the present.

YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT

If you fit the definition above, you may choose to join this action by mailing or faxing the attached "Plaintiff Consent Form" to plaintiffs' counsel at the following address:

Maia Goodell, Esq.
Vladeck, Waldman, Elias & Engelhard, P.C.
1501 Broadway, Suite 800
New York, NY 10036
phone:  (212) 403-7300
fax: (212)221-3172
email:  mgoodell@vladeck.com
website:  www.vladeck.com

The "Plaintiff Consent Form" must be received in sufficient time for Plaintiff's counsel to file it with the Court on or before [DATE].

EFFECT OF JOINING OR NOT JOINING THIS LAWSUIT

If you choose to join this action, you and Abercrombie will be bound by any ruling, judgment, award or settlement, whether favorable or unfavorable. If you do not join this action, you will not be bound by any ruling, judgment, award, or settlement, entered in this case, favorable or unfavorable. If you do not to join this action, you are free to take action on your own.

If you file a "Plaintiff Consent Form" your continued right to participate in this action will depend upon a later decision by the Court that you and the named Plaintiff are "similarly situated" in accordance with applicable laws, and that it is appropriate for this case to proceed as a collective action.

STATUTE OF LIMITATIONS

The FLSA has a maximum statute of limitations of three years. If you choose to join this action, or choose to bring your own action, you may be able to recover damages if you were improperly denied overtime compensation only during weeks worked within three years of the date you file your "Plaintiff Consent Form." If you choose not to join in this action or file your own action, some or all of your potential claims may later be barred by the applicable statute of limitations.

NO RETALIATION PERMITTED

The law prohibits retaliation against employees for exercising their rights under the FLSA. Therefore, Abercrombie is prohibited from discharging you or retaliating against you in any other manner because you choose to participate in this action.

YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this case by filing a Plaintiff Consent Form, you will be agreeing to representation by Plaintiff's Counsel.

Debra Raskin, Esq.
Maia Goodell, Esq.
Vladeck, Waldman, Elias & Engelhard, P.C.
1501 Broadway, Suite 800
New York, NY 10036
phone: (212) 403-7300
fax: (212)221-3172
email: mgoodell@vladeck.com
website: www.vladeck.com

The attorneys are being paid on a contingency fee and/or statutory basis, which means that if there is no recovery, there will be no attorneys' fees. If there is a recovery, the attorneys will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. The specific terms and conditions of representation will be contained in a fee agreement entered into by the attorneys and you.

FURTHER INFORMATION

Further information about this lawsuit or this notice can be obtained by contacting Plaintiff's counsel at the address or telephone number provided above.

CONCLUSION

THIS NOTICE AND ITS CONTENT HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, THE HONORABLE P. KEVIN CASTEL, UNITED STATES DISTRICT COURT JUDGE. THE COURT HAS MADE NO DECISION IN THIS CASE ABOUT THE MERITS OF PLAINTIFFS' CLAIMS OR OF DEFENDANTS' DEFENSES.

PLAINTIFF CONSENT FORM

I hereby consent to join the lawsuit against Defendants Abercrombie & Fitch Co.; Abercrombie & Fitch Stores, Inc.; Abercrombie & Fitch Trading Co., d/b/a Abercrombie and Fitch, Abercrombie, and Hollister and Ruehl (collectively "Abercrombie" or "defendants") as a Plaintiff to assert claims against it for wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. any applicable state laws. During my employment there were occasions when I worked over 40 hours per week for Abercrombie as a Loss Prevention Supervisor or Loss Prevention Agent in New York or New Jersey and was not paid for all hours worked.


_____          _____
Signature                                                              Print Name


_____          _____
Date                                                                    Address (with apartment number if applicable)


                                                                        _____
                                                                        City, State, Zip Code


Home Phone:  _____

Work Phone:   _____

Cell Phone:   _____

E-Mail Address:  _____

Social Security Number (last 4 digits):  _____

Emergency Contact (in case we lose contact with you):  _____


**Mail or Fax to:**
Maia Goodell, Esq.
Vladeck, Waldman, Elias & Engelhard, P.C.
1501 Broadway, Suite 800
New York, NY 10036
phone:  (212) 403-7300
fax: (212)221-3172
email:  mgoodell@vladeck.com
website:  www.vladeck.com