UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
SHONECA DAVIS, DAWUD EUDELLE, JACLYN
PAGNOTTA, and DAVID POMALES, individually and on
behalf of all others similarly situated, and             08 Civ 01859

KENNETH FINGERMAN,                                       ECF CASE

                Plaintiffs,                           CLASS ACTION

      - against -                                   AFFIRMATION OF
                                                      DAVID POMALES

ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,
---------------------------------------- x

DAVID POMALES, under penalty of perjury, affirms and states as follows:

      1.    I am a plaintiff in the above-captioned case and I submit this affirmation in support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery.

      2.    I started working at Abercrombie's South Street Seaport store in August 2005, and I was transferred to the Fifth Avenue store when it opened in November 2005.

      3.    When I started work at Abercrombie, I worked for Michael Oliveras ("Oliveras"), the South Street Seaport Loss Prevention Manager, and for regional managers, including Robert Ruiz ("Ruiz"). The regional managers were responsible for New York and New Jersey.

      4.    When I started, I understood that I would be paid about $29,500 per year for forty hours a week of work.

252067 v1

5.At South Street Seaport, I was regularly required to work overtime. I was assigned to eight-hour shifts but sometimes worked more; for example, I participated in "floor sets," when the stores' entire inventory was changed and I worked 12 hour shifts because I had to stay until another Loss Prevention employee arrived. I was not paid overtime.

6.At the South Street Seaport, I also participated in regional loss prevention conference calls with loss prevention employees from New York and New Jersey stores.

7.After I was moved to the Fifth Avenue store in November 2005, I continued to work overtime without pay.

8.My work duties are set out in a store-wide loss prevention binder, which I understand was the same for loss prevention personnel in every store. the binder includes a loss prevention "scorecard" which was a checklist of tasks we should complete in a work day. I spend a substantial portion of my time training store employees in loss prevention procedures pursuant to a set outline in the loss prevention binder; monitoring store records and trash to stop internal theft; meeting with store managers, loss prevention managers, and on regional loss prevention conference calls; and completing paperwork.

9.My work consists largely of monitoring records of merchandise tracking; monitoring store trash for merchandise employees would try to remove from the building; meeting with store managers and loss prevention managers; participating in conference calls; doing paperwork; and conducting training of the retail workers in the store in accordance with a fixed outline provided in the loss prevention binder.

10.When I suspect that a store employee was stealing, which we called an "internal" investigation, I was required to advise my managers, who would determine what to do. I did not have authority to discipline employees.

11. Based on the regional conference calls and my discussions with and observation of other employees in my position, I understand that the duties and responsibilities of other Loss Prevention Supervisors and Agents in Abercrombie and Fitch, abercrombie, Hollister, and Ruehl stores in New Jersey were substantially the same as mine.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8, 2008 in New York, New York.

*David Pomales*
David Pomales