UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SHONECA DAVIS, DAWUD EUDELLE, JACLYN
PAGNOTTA, and DAVID POMALES, individually and on
behalf of all others similarly situated, and                           08 Civ 01859

KENNETH FINGERMAN,                                                     ECF CASE

                    Plaintiffs,                           CLASS ACTION

           - against -                                              AFFIRMATION OF
                                                                JACLYN PAGNOTTA
ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,
------------------------------------------------------------x

        JACLYN PAGNOTTA, under penalty of perjury, affirms and states as follows:

        1.    I am a plaintiff in the above-captioned case and I submit this affirmation in support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery.

        2.    I worked at defendants' Abercrombie & Fitch store at the South Street Seaport in New York, New York, from June 2006 until on or about December 23, 2006, and at defendants' Abercrombie and Fitch Store on Fifth Avenue in New York, New York from on or about December 26, 2006 until March 2007.

        3.    My title was Loss Prevention Supervisor at first, but later I was told that my title was being changed to Loss Prevention Agent, with no change in duties.

        4.    When I started in June 2006, I was told that I would be paid $30,000 per year for forty hours a week of work. At the time I started, there were five loss prevention

251022 v1

employees at my level at the South Street Seaport store, and a loss prevention manager, Mike Olivares ("Olivares").

5. At first, I was assigned to eight-hour shifts. I often worked in excess of the eight hours. I was sometimes given days off to compensate for this additional work time, but not always. On some occasions, the time off was in the next pay period after the period in which I worked the extra hours.

6. In about the fall of 2006, I was told that other loss prevention agents or supervisors were filling out time sheets. Oliveras told my colleague Jesus Ramerez and me that we should not fill out time sheets, that Oliveras would do it for us.

7. In the beginning of January, I was reassigned to the Fifth Avenue store. There, loss prevention agents and supervisors were directed to punch in at a register to record our hours worked. Claiming that time had been entered in error, which was not true, loss prevention managers regularly directed me to "adjust the punches."

8. It became clear to me that the adjustments were not to correct errors, but rather were designed so loss prevention supervisors or agents would not record over forty hours work per week, even though they had in fact worked longer hours. When I questioned my supervisors about this, they stopped asking me to adjust the time punches.

9. At some point in late 2006 or early 2007, my title was changed from loss prevention supervisor to loss prevention agent with no change in duties, and I began to receive half time overtime pay.

10. My work duties were set out in a store-wide loss prevention binder, which I understand was the same for loss prevention personnel in every store. The binder included a loss prevention "scorecard" which was a checklist of tasks we should complete in a work day. I

spent a substantial portion of my time training store employees in loss prevention procedures pursuant to a set outline in the loss prevention binder; monitoring store records and trash to stop internal theft; meeting with store managers, loss prevention managers; participating in regional loss prevention conference calls; and completing paperwork.

11. I did not have authority to deviate from the assigned procedures for training. I did not have authority to pursue an investigation by interviewing an employee, or calling the police. I made recommendations to my managers about such matters. I did not have authority to discipline employees.

12. Although at first my title was "loss prevention supervisor," no one reported to me. My work consisted largely of monitoring records of merchandise tracking; monitoring store trash for merchandise employees would try to remove from the building; meeting with store managers and loss prevention managers; conference calls; doing paperwork; and conducting training of the retail workers in the store in accordance with a fixed outline provided in the loss prevention binder. I also periodically was required to monitor while individuals brought in to conduct inventories scanned the items in the store, both at the South Street Seaport and at other stores.

13. When I suspected that a store employee was stealing, which we called an "internal" investigation, I was required to advise my managers who would determine what to do. I did not have authority to discipline employees.

14. On several occasions, I was assigned to work at other stores in New York State, including stores on Long Island, Staten Island, and New Jersey. In addition, I participated in regional loss prevention conference calls with loss prevention employees from New York and

New Jersey stores. We called stores outside of the New York City Fifth Avenue and South Street Seaport stores "field stores."

15. Based on my contacts with the field stores, I learned that the duties of the loss prevention supervisors or loss prevention agents assigned to these stores were substantially similar to the duties I performed. We used the same store-wide loss prevention binder, which included set procedures for every store, and a loss prevention "scorecard," which was a checklist of tasks to complete. As far as I knew, there were no written variations in procedures between the field stores and the Manhattan stores.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8, 2008 in New York, NY

Jaclyn Pagnotta

251022 v1                                                            4