UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SHONECA DAVIS, DAWUD EUDELLE, JACLYN
PAGNOTTA, and DAVID POMALES, individually and on
behalf of all others similarly situated, and        08 Civ 01859

KENNETH FINGERMAN,                                  ECF CASE

                  Plaintiffs,        CLASS ACTION

     - against -                                AFFIRMATION OF
                                                    SHONECA DAVIS
ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,
------------------------------------x

      SHONECA DAVIS, under penalty of perjury, affirms and states as follows:

      1.    I am a plaintiff in the above-captioned case and I submit this affirmation in support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery.

      2.    I worked at defendants' stores in New Jersey from September 2006 until January 2007 and in New York . My title was initially Loss Prevention Supervisor and then it was changed to Loss Prevention Agent with no change in job duties.

      3.    I was assigned to work in the Abercrombie & Fitch, abercrombie, and Hollister stores in Short Hills, New Jersey, and in the Abercrombie & Fitch store in Bridgewater, New Jersey from September 2006 through January 2007.

      4.    Around the time he hired me, regional loss prevention manager Robert Ruiz ("Ruiz") told me that that I would earn a set amount per year for a forty hour workweek.

251014 v1

He also said that I theoretically would earn time and a half for any overtime, but that would "never happen." He said that I would be given time off to compensate for any overtime that I worked.

5. In general, I was required to be present a full forty hours a week in shifts at the stores.

6. I also regularly worked additional hours. My supervisors knew about this work and indeed asked me to do it.

7. For example, I was required to submit a daily report by e-mail to regional supervisors. There was no computer available for that purpose at any of the stores where I worked. I was required to do this work from home or an internet café after I finished my 8-hour shift. This activity took me about an hour each day that I worked and resulted in about five extra hours per week of unpaid work.

8. I understood that such daily report summaries were required of all loss prevention employees in my position, and that no stores had computers available for that purpose at that time.

9. I was also required to participate in regional loss prevention conference calls, which frequently lasted an hour or more. On weeks when these calls happened during time that I was not working, I called in from my personal telephone and this was additional unpaid work.

10. Store management required me to complete time sheets showing no more than forty hours of work per week, regardless of the amount of time I actually worked.

11. In some cases, I was offered time off to compensate for extra hours worked, but the time off came after the end of the pay period in which I worked the extra hours.

12. On December 11, 2006, during a loss prevention conference call, I and all loss prevention employees in my position were specifically instructed never to record more than forty hours per week on our time sheets. We were told not to fax our time sheets to Amy, a human resources department employee, but instead to send them to regional loss prevention managers Michael Olivares ("Olivares") or Hector Graciani ("Graciani"), who would make appropriate changes so that the time sheets did not reflect more than forty hours of work per week.

13. Exhibit 1 to this affidavit is a true and correct copy of the minutes of the December 11, 2006 conference call, which I completed and sent by electronic mail to Olivares.

14. Although my title was supervisor, no one reported to me. My work consisted of floor surveillance, monitoring surveillance cameras and tapes, reviewing records of merchandise tracking, and conducting training of the retail workers in the store in accordance with a fixed outline provided in the loss prevention binder.

15. When I suspected that a store employee was stealing, which we called an "internal" investigation, I was required to advise my managers who would determine what to do. I did not have authority to discipline employees.

16. Based on the regional conference calls and my discussions with other employees in my position, I understand that the duties and responsibilities of other Loss Prevention Supervisors in Abercrombie and Fitch, abercrombie, Hollister, and Ruehl stores in New Jersey were substantially the same as mine.

17. I worked at defendants' Fifth Avenue store in Manhattan from approximately January 2007 through March 2007. My duties at Fifth Avenue were similar to my duties in New Jersey.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8, 2008 in New York, New York.

_____
Shoneca Davis

# EXHIBIT 1

239346 v1

| | |
|---|---|
| **From:** | PARIS DAVIS [duvre75@yahoo.com] |
| **Sent:** | Wednesday, December 13, 2006 1:48 PM |
| **To:** | Michael_Oliveras@abercrombie.com |
| **Subject:** | Shoneca (conference call recap) |

December 11, 2006
Loss Prevention conference call recap

### Time Sheets

- Do not fax to Amy. Fax time sheets to Micheal or Hector. (718) 247-1709.
- Time sheets can be sent as early as Saturday, or late as Monday before 1030.
- Employee number, SS number, signature and week ending need to be on the time sheets before being faxed.
- It is not necessary to put your lunch period.
- Any overtime has to be approved by your appropriate manager.

**LP weekly topics (Chris Scudilla)**

<u>Manager accountability</u>

- Customer quality checks.
- Register audits
- Walking employees out.
- 5 minute meeting with models before zoning.
- Clothing audits (Managers can not be accountable for this. With partnership and LP assistance it is productive. )
- **Follow up !!!**

### Audits

<u>**Holiday audit**</u> – Every Monday (discuss problem areas at the Tuesday management meeting)

<u>**Fragrance audit**</u>- Audit 3 to 4 boxes of testers. Recap results to Rob via voicemail by Friday.

**Shipping audit-** 3 boxes recap via voicemail with LPM before 1600 of each scheduled day.
**Fire safety audit-** Results should be related to LPM via voicemail.
**Safe audit**
- Cut up any credit cards found.
- Lost and found should be discarded.
- Main register key should remain in the safe.
**Clothing audit-** Should be conducted 3 times daily. (Partner with GM)

## Trainings / workshops

- Educate managers on how to identify dishonest employees.
- Drive programs. ( Confidential line )
- Incentive programs.

## Communication and sign offs

- Sign on at the beginning of your shift. (Date and time ,name)
- Midday sign off with shipping audit results. ( Detailed, read off of the audit) 1200 to 1400
- At the end of your shift. (Date and time, name. Hollister coverage if applicable)
- Must sign in and out from scheduled location.
- Communicate externals with other agents.

## Reminders!!!!

**Cameras**
- Cameras should not be on when you are not there .(Log off)
- Keep area clear.
- Problems with cameras. Josh @ 7283

**Scheduling**

- Manage times to correspond with store hours and need.

- Communicate any schedule change to LPM.
- Weekly sign off with Rob. Via voicemail or email. (due Monday before 1200)
- Store doors should be locked when store is not open for business. Back doors should be armed when not in use.
- 50 unit purchase limit for the holiday.
- **Brand protection** 1(866)-901-3253

Meeting minutes **1.50 hours**

---

Everyone is raving about the all-new Yahoo! Mail beta.