UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHONECA DAVIS, DAWUD EUDELLE, JACLYN
PAGNOTTA, and DAVID POMALES, individually
and on behalf of all others similarly situated, and          08 Civ. 1859 (PKC)

KENNETH FINGERMAN,
                                                              ECF CASE
                          Plaintiffs,

              - against -

ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch, Abercrombie,
and Hollister and Ruehl,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CLASS PLAINTIFFS' MOTION FOR PRELIMINARY CERTIFICATION
PURSUANT THE FAIR LABOR STANDARDS ACT, FOR
COURT-FACILITATED NOTICE TO SIMILARLY SITUATED PERSONS,
AND FOR EXPEDITED DISCOVERY

---

VLADECK, WALDMAN, ELIAS &
   ENGELHARD, P.C.
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

Of counsel:
          Debra L. Raskin
          Maia Goodell

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 2

I.      THE PURPORTED FACTUAL DISPUTES ABOUT DEFENDANTS'
ILLEGAL PRACTICES DO NOT DEFEAT PRELIMINARY
CERTIFICATION ..................................................................................... 2

      A.     Applicable Legal Standard ......................................................... 3

      B.     All Potential Collective Action Members Were Wrongfully Treated
As Exempt Until November 2006 ............................................... 6

           1.     Statements by Agents with No Personal Knowledge of the
Work During the Time Period at Issue Should be Stricken ........... 6

           2.     Abercrombie Has Not Demonstrated that Agents Were
Exempt ....................................................................................... 7

           3.     Whether Agents Were Exempt Is Not an Individual Inquiry ......... 9

      C.     Until February 2007 All Potential Collective Action Members
Were Wrongfully Directed To Work Overtime Off the Clock ................. 13

II.     THE PROPOSED NOTICE AND DISCOVERY ARE APPROPRIATE ........... 14

      A.     Three Years' Notice is Appropriate ......................................... 14

      B.     The Form of the Proposed Notice is Appropriate ..................... 17

      C.     The Proposed Discovery is Appropriate ................................... 18

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

Adams v. Dep't of Juvenile Justice of City of N.Y.,
    143 F.3d 61 (2d Cir. 1998)..................................................................................5

Allen v. Bd. of Pub. Educ. for Bibb County,
    495 F.3d 1306 (11th Cir. 2007) ......................................................................15

Amendola v. Bristol-Myers Squibb Co.,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)..........................................................3, 4

Beck v. City of Cleveland,
    390 F.3d 912 (6th Cir. 2005) ..........................................................................16

Belcher v. Shoney's Inc.,
    927 F. Supp. 2d 249 (M.D. Tenn. 1996).........................................................18

Belt v. Emcare, Inc.,
    299 F. Supp. 2d 664 (E.D. Tenn. 2003)..........................................................18

Boekemeier v. Fourth Universalist Soc'y in City of N.Y.,
    86 F. Supp. 2d 280 (S.D.N.Y. 2000)...............................................................15

Bowens v. Atl. Maint. Corp.,
    546 F. Supp. 2d 55 (E.D.N.Y. 2008) ..............................................................19

Bowrin v. Catholic Guardian Soc.,
    417 F. Supp. 2d 449 (S.D.N.Y. 2006).............................................................17

Brock v. Superior Care, Inc.,
    840 F.2d 1054 (2d Cir. 1988)..........................................................................15

Burch v. Qwest Communications Intern., Inc.,
    500 F. Supp. 2d 1181 (D. Minn. 2007)...........................................................14

Burke v. County of Monroe,
    225 F. Supp. 2d 306 (W.D.N.Y. 2002) .............................................................5

Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.,
    273 F.3d 481 (2d Cir. 2001).............................................................................16

Chevron v. Nat'l Resources Def. Council,
    467 U.S. 837 (1984)..........................................................................................16

Christensen v. Harris County,
    529 U.S. 576 (2000)..................................................................................16

Damassia v. DuaneReade, Inc.,
    No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ..........................4, 6, 10, 12

Damassia v. DuaneReade, Inc.,
    No 04 Civ. 8819, 2008 WL 2201469 (S.D.N.Y. May 27, 2008).........................................9

Debejian v. Atl. Testing Labs., Ltd.,
    64 F. Supp. 2d 85 (N.D.N.Y. 1992)...............................................................................17

Diaz v. Elecs. Boutique of Am., Inc.,
    No. 04-Civ.-0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17., 2005)..........................13, 14

Dietrich v. Liberty Square, L.L.C.,
    230 F.R.D. 574 (N.D. Iowa 2005) ................................................................................14

Difilippo v. Barclays Capital, Inc.,
    552 F. Supp. 2d 417 (S.D.N.Y. 2008)............................................................................5

Doucoure v. Matlyn Food, Inc.,
    554 F. Supp. 2d 369 (E.D.N.Y. 2008) ..........................................................................15

Dumitrescu v. Mr. Chow Enterprises, Ltd.,
    No. 07 Civ. 3601, 2008 WL 2600667 (S.D.N.Y. June 30, 2008).......................................4

Ebbert v. Nassau County,
    No. 05-CV-5545, 2007 WL 2295581 (E.D.N.Y. Aug. 9, 2007) .......................................15

Fasanelli v. Heartland Brewery, Inc.,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007).......................................................................2, 17

Francis v. A&E Stores, Inc.,
    No. 06 Civ. 1638, 2008 WL 2588851 (S.D.N.Y. June 26, 2008)............................ 4, 18, i

Gambo v. Lucent Technologies, Inc.,
    No. 05 C 3701, 2005 WL 3542485 (N.D. Ill. Dec 22, 2005) ..........................................11

Gieseke v. First Horizon Home Loan Corp.,
    408 F. Supp. 2d 1164 (D. Kan. 2006)...........................................................................11

Grayson v. K Mart Corp.,
    79 F.3d 1086 (11th Cir. 1996) .......................................................................................4

Green v. Abercrombie & Fitch,
    No. 06-cv-12879-PKC (S.D.N.Y. filed Nov. 2, 2006) ......................................................2

Gustafson v. Bell Atl. Corp.,
        171 F. Supp. 2d 311 (S.D.N.Y. 2001)...........................................................................17

Guzman v. VLM, Inc.,
        No. 07-CV-1126, 2007 WL 2994278 (E.D.N.Y. Oct 11, 2007)........................................18

Heagney v. Eur. Amer. Bank,
        122 F.R.D. 125 (E.D.N.Y. 1988) .................................................................................12

Heckler v. DK Funding, LLC,
        502 F. Supp. 2d 777 (N.D. Ill., 2007) ..........................................................................14

Hoffmann-La Roche Inc. v. Sperling,
        493 U.S. 165 (1989)..................................................................................................2

Hoffmann v. Sbarro, Inc.,
        982 F. Supp. 249 (S.D.N.Y. 1998) ...............................................................................3

Holt v. Rite Aid Corp.,
        333 F. Supp. 2d 1265 (M.D. Ala. 2004) .......................................................................11

Idaho Sheet Metal Works, Inc. v. Wirtz,
        383 U.S. 190 (1966)..................................................................................................5

Iglesias-Mendoza v. LaBelle Farm, Inc.,
        239 F.R.D. 363 (S.D.N.Y. 2007) ..............................................................................2, 17

In re Initial Pub. Offering Sec. Litig.,
        471 F.3d 24 (2d Cir. 2006)..........................................................................................4

Iriarte v. Redwood Deli and Catering, Inc.,
        No. CV-07-5062, 2008 WL 2622929 (E.D.N.Y. Jun 30, 2008).........................................14

Jacobs v. N.Y. Foundling Hosp.,
        483 F. Supp. 2d 251 (E.D.N.Y. 2007) ..........................................................................11

Kaur v. Royal Arcadia Palace, Inc.,
        No. 05-CV-4725, 2007 WL 4591250 (E.D.N.Y. Dec. 27, 2007).......................................15

Kern v. Siemens Corp.,
        393 F.3d 120 (2d Cir. 2004).........................................................................................4

Laroque v. Domino's Pizza, LLC,
        557 F. Supp. 2d 346 (E.D.N.Y. 2008) .......................................................................3, 14

Lawrence v. City of Phila.,
    No. 03-Civ.-4009, 2004 WL 945139 (E.D. Pa. Apr. 29, 2004)........................13

Lee v. ABC Carpet & Home,
    236 F.R.D. 193 (S.D.N.Y. 2006) .................................................................2

Lynch v. U.S. Automobile Ass'n,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)..............................1, 3, 17, 18, 19

Mendez v. Radec Corp.,
    232 F.R.D. 78 (W.D.N.Y. 2005) ................................................................14

Mike v. Safeco Ins. Co. of Am.,
    274 F. Supp. 2d 216 (D. Conn. 2003) ......................................................11

Morales v. Plantworks, Inc.,
    No. 05 Civ 2347, 2006 WL 278154 (S.D.N.Y. 2006) ...........................3

Morden v. T-Mobile USA, Inc., No.,
    No. C05-2112RSM, 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006) ............11

Morisky v. Public Service Elec. and Gas Co.,
    111 F. Supp. 2d 493 (D.N.J. 2000) ...........................................................10

Nat'l R.R. Passenger Corp. v. Morgan,
    536 U.S. 101 (2002)..................................................................................17

Neary v. Metro. Prop. and Cas. Inc. Co.,
    517 F. Supp. 2d 606 ...................................................................................11

Patton v. Thomson Corp.,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) .......................................................2

Poreda v. Boise Cascade, L.L.C.,
    532 F. Supp. 2d 234 (D. Mass. 2008) ......................................................19

Prizmic v. Armour, Inc.,
    No. 05 Civ 2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ........................3

Robinson-Smith v. Government Employees Ins. Co.,
    323 F. Supp. 2d 12 (D.D.C. 2004) .............................................................8

Rodolico v. Unisys Corp.,
    199 F.R.D. 468 (E.D.N.Y. 2001) ..............................................................12

Rodriguez v. Farm Stores Grocery, Inc.,
    518 F.3d 1259 (11th Cir. 2008) ..................................................................5

Rubery v. Buth-Na-Bodhaige, Inc.,
    470 F. Supp. 2d 273 (W.D.N.Y 2007) ............................................................5

Rubery v. Buth-Na-Bodhaige, Inc.,
    No. 04 Civ. 6337L, 2008 WL 3188769 (W.D.N.Y. Aug. 8, 2008) ..................12

Scott v. Aetna Servs.,
    210 F.R.D. 261 (D. Conn. 2002)....................................................................10

Severtson v. Phillips Beverage Co.,
    137 F.R.D. 264 (D. Minn. 1991)......................................................................3

Sherrill v. Sutherland Global Servs., Inc.,
    487 F. Supp. 2d 344 (W.D.N.Y. 2007) ...........................................................19

Summa v. Hofstra Univ., No. CV 07-3307,
    2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008)........................................5, 11, 15

Torres v. Gristede's Operating Corp.,
    2006 WL 2819730 (S.D.N.Y. Sep. 29, 2006)..................................................10

Underwood v. NMC Mortg. Corp.,
    245 F.R.D. 720 (D. Kan. 2007)......................................................................19

Vaicaitiene v. Partners In Care, Inc.,
    No. 04 Civ. 9125, 2005 WL 1593053 (S.D.N.Y. July 6, 2005) ........................15

Williams v. Twenty Ones, Inc.,
    No. 07 Civ. 3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008)........................4

## STATUTES AND REGULATIONS

Fed.R. Civ. P. 23 ................................................................................................4

Fed. R. Evid. 602 .............................................................................................16

N.Y. Gen. Business Law § 399-dd ................................................................6, 19

29 C.F.R. § 541.200 ..........................................................................................7

29 C.F.R. § 541.202(a)....................................................................................7, 8

## PRELIMINARY STATEMENT

Defendants[1] set forth a whirlwind of irrelevant facts and law in a failed attempt to rebut class plaintiffs' showing that Abercrombie applied similar policies to all individuals working with the same job title in the same region. Defendants introduce factual disputes that not only have no bearing to this stage of litigation, but also relate to periods after the timeframe at issue. Abercrombie cites irrelevant law concerning post-discovery proceedings primarily from out-of-circuit district courts while it largely ignores the on-point evidence and applicable authority adduced in plaintiffs' memorandum.

Defendants argue that class plaintiffs performed their duties differently from other Agents because of "personality and work ethic" (Def. Cert. Br. 12),[2] a barely veiled assertion that if class plaintiffs did not exercise sufficient discretion to be classified properly as exempt, it is only because they were lazy. There is no support for this gratuitous attempt to tar workers who not only worked long hours for defendants without overtime pay but now have endured significant burdens to secure that pay for others. Rather, class plaintiffs' and the Agents they represent did not exercise significant discretion because, as they will prove at an appropriate stage of this litigation, defendants closely regulated their activities.

Most tellingly, defendants do not distinguish the numerous cases where this Court has granted motions virtually identical to class plaintiffs' motion here. This authority holds that the type of ultimate factual disputes defendants attempt to introduce are inappropriate at this stage of the proceedings. See, e.g., Lynch v. U.S. Automobile Ass'n, 491 F. Supp. 2d 357 (S.D.N.Y.

---

[1]    The parties are referred to as they are in Plaintiffs' Memorandum of Law in Support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the FLSA, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery ("Pl. Cert. Br."), at 2 n.2. The term "Agents" refers collectively to both "Loss Prevention Supervisors" and Loss Prevention Agents. (Pl. Cert. Br. 4)

[2]    Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Certification Pursuant to the FLSA, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery, is cited as "Def. Cert. Br." Plaintiff's Memorandum of Law in Opposition to that motion, submitted simultaneously with this brief, is cited as "Pl. 12(b)(1) Br."

2007); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317 (S.D.N.Y. 2007); Iglesias-Mendoza v. LaBelle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007); Patton v. Thomson Corp., 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

Defendants first argue that, contrary to their current policy of treating Agents as non-exempt, the Agents prior to November 2006 were actually subject to the administrative exemption. This argument is both irrelevant and wrong, legally and factually, because such disputes are not properly evaluated on a preliminary certification motion and because the Agents' duties were inconsistent with exempt status. Defendants next argue that their regional supervisors' direction to falsify time sheets so as not to reflect overtime, is insufficient to make the required modest factual showing that class plaintiffs and other Agents were similarly situated with respect to Abercrombie's illegal off-the-clock overtime practices. Similarly, defendants erroneously suggest that this and other evidence does not meet the limited requirements for a showing of willfulness that permits discovery and notice to a three-year class. Finally, defendants quibble with the discovery and notice that judges of this Court have specifically authorized.

ARGUMENT

I.    THE PURPORTED FACTUAL DISPUTES ABOUT DEFENDANTS' ILLEGAL PRACTICES DO NOT DEFEAT PRELIMINARY CERTIFICATION

The goal of preliminary certification is not, as defendants apparently would have it, to resolve the merits of class plaintiffs' claims. Rather, its purpose is to improve judicial efficiency by providing for appropriate discovery and the subsequent merits determination in a collective setting, instead of through piecemeal individual litigation. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989); see Green v. Abercrombie & Fitch, No. 06-cv-12879-PKC (S.D.N.Y. filed Nov. 2, 2006) (asserting individual claims similar to those here that were voluntarily dismissed prior to collective certification). Further, given the running of the statute of limitations

for potential opt in plaintiffs, preliminary certification allows prompt notice to protect their legal rights. <u>Lynch</u>, 491 F. Supp. 2d at 367.

As defendants admit, this case is currently at the first, or "notice" stage, which requires only a "modest factual showing" that plaintiffs are "similarly situated to the remainder of the proposed class." (Def. Cert. Br. 15)  Defendants are unable to distinguish this case from authority granting preliminary certification (Pl. Cert. Br. 8-11).  The cases defendants cite (Def. Cert. Br. 14-15) further demonstrate that plaintiffs have more than met the minimal burden required at this stage, a burden designed primarily to guard against stirring up litigation by fishing expeditions; class plaintiffs, in contrast, have introduced documents and affirmations giving a specific factual basis for their claims.  Courts have repeatedly distinguished the kind of cases defendants cite, where plaintiffs introduced no evidence of the similarity of putative class members,[3] from the situation here, where Abercrombie attempts to dispute plaintiffs' factual showing.  <u>See, e.g.,</u> <u>Hoffmann v. Sbarro, Inc.</u>, 982 F.Supp. 249, 262 (S.D.N.Y. 1998) (distinguishing <u>Severtson</u>); <u>Laroque v. Domino's Pizza, LLC</u>, 557 F. Supp. 2d 346, 353-54 (E.D.N.Y. 2008) (distinguishing <u>Prizmic</u> and <u>Morales</u>).

A.      <u>Applicable Legal Standard</u>

The overwhelming weight of authority in this District holds that it is inappropriate to consider the merits of overtime claims on a motion for preliminary certification (Pl. Cert. Br. 9-11).  Defendants cite a single opinion (Def. Cert. Br. 17 n.17) that suggests that the district court should "scrutinize the merits based on the record developed to date by the parties and to the extent necessary to address this motion." <u>Amendola v. Bristol-Myers Squibb Co.</u>, 558 F.Supp.

---

[3]     For example, <u>Severtson v. Phillips Beverage Co.</u>, 137 F.R.D. 264, 266 (D. Minn. 1991) (Def. Cert. Br. 14, 16), involved reliance on conclusory complaint allegations standing alone. Similarly in <u>Morales v. Plantworks, Inc.</u>, No. 05 Civ. 2347, 2006 WL 278154, at *2 (S.D.N.Y. 2006), the Court denied certification for the moment because plaintiffs' motion papers made "no reference to any . . . employee other than plaintiffs and . . . no allegations of a common policy." <u>See</u> <u>Prizmic v. Armour, Inc.</u>, No. 05 Civ. 2503, 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying certification and notice because "plaintiff has not submitted <u>any</u> evidence by affidavit or otherwise" and had "not submitted any specific facts" even by allegation).

2d 459, 467 n.9 (S.D.N.Y. 2008).  The Court in <u>Amendola</u> cited the Second Circuit's decision <u>In re Initial Public Offering Securities Litigation</u>, 471 F.3d 24, 41 (2d Cir. 2006), which held that, for purposes of certifying a class under Fed.R. Civ. P. 23, the district court should resolve factual disputes relevant to each Rule 23 requirement.  <u>Amendola</u>'s reliance on a Rule 23 case is puzzling in light of the clear distinction between Rule 23 certification requirements and the preliminary step of the FLSA two-stage process.  <u>See</u> <u>Kern v. Siemens Corp.</u>, 393 F.3d 120, 127 (2d Cir. 2004) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." (quoting <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1096 n. 12 (11th Cir. 1996)) (<u>see also</u> Pl. Cert. Br. 10).

In any event, <u>Amendola</u> is inapposite because there the court had ordered preliminary discovery that included disclosure of a sampling of names of potential collective action members and six depositions; the court found that the "parties' factual submissions [were] largely consistent in their description" of the disputed job duties.  558 F. Supp. 2d at 463 n.3.  Here, in contrast, no discovery has yet been conducted and defendants' descriptions of the Agent position's duties  differ markedly from the evidence of those duties class plaintiffs have submitted (<u>see</u> <u>infra</u> 6).  It is not yet appropriate to resolve these factual disputes.  Defendants fail to distinguish the numerous cases plaintiffs cite that hold that a court should not scrutinize the merits when it determines whether preliminary certification is appropriate. (Pl. Cert. Br. 10).[4]  A number of cases decided after <u>Amendola</u> so hold.[5]

---

[4]    <u>See</u> <u>Damassia v. DuaneReade, Inc.</u>, No. 04 Civ. 8819, 2006 WL 2853971, at *5 (S.D.N.Y. Oct. 5, 2006) ("<u>Damassia I</u>") ("courts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice").

[5]    <u>Francis v. A&E Stores, Inc.</u>, No. 06 Civ. 1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008) ("At the initial assessment stage, before discovery is completed, the Court does not resolve factual disputes [or] decide substantive issues going to the ultimate merits . . . ."); <u>Williams v. Twenty Ones, Inc.</u>, No. 07 Civ. 3978, 2008 WL 2690734, at *2 (S.D.N.Y. June 30, 2008) (rejecting "fact-intensive, merits-based arguments" at preliminary certification stage, since "the Court will be better equipped . . . to assess the force of this argument after discovery has been completed, at the second, 'more heightened' stage of FLSA scrutiny"); <u>Dumitrescu v. Mr.</u>

Though their brief fails to specify this standard, <u>defendants</u> have the burden of proving that class plaintiffs and the potential collective action members meet all the requirements of the administrative exemption. Moreover, courts narrowly construe the FLSA exemptions.[6] The factors relevant to a claimed exemption present factual questions that a jury must determine where, as here, the facts are contested.[7]

Not only is it defendants' burden to prove an exemption to the FLSA, but there is a Seventh Amendment right to jury trial on contested factual issues. (<u>See</u> Pl. 12(b)(1) Br. 5) The only way for defendants to prevail on their merits claim would be for the Court to hold that a rational jury would be required to conclude that an exemption existed. <u>See</u> <u>Difilippo v. Barclays Capital, Inc.</u>, 552 F. Supp. 2d 417, 421 (S.D.N.Y. 2008). Such a determination would be inappropriate in light of the pre-discovery posture of this motion. For example, plaintiff has not even had the opportunity to cross-examine the employees on whose statements Abercrombie relies.

---

<u>Chow Enterprises, Ltd.</u>, No. 07 Civ. 3601, 2008 WL 2600667, at *5 (S.D.N.Y. June 30, 2008) (declining to address merits of underlying claims, citing cases); <u>Summa v. Hofstra Univ.</u>, No. CV 07-3307, 2008 WL 3852160, at *5, (E.D.N.Y. Aug. 14, 2008) (declining to address, as a merits argument, claim that some of the proposed collective action members were students who received a stipend and thus not employees subject to FLSA).

[6]     <u>Idaho Sheet Metal Works, Inc. v. Wirtz</u>, 383 U.S. 190, 206 (1966) (holding no exemption shown where evidence is uncertain); <u>Adams v. Dep't of Juvenile Justice of City of N.Y.</u>, 143 F.3d 61, 65 (2d Cir. 1998); <u>Burke v. County of Monroe</u>, 225 F. Supp. 2d 306, 321 (W.D.N.Y. 2002) (finding defendants failed to carry burden of showing computer network administrators were exempt).

[7]     <u>Rodriguez v. Farm Stores Grocery, Inc.</u>, 518 F.3d 1259, 1264 (11th Cir. 2008) (executive exemption properly submitted to jury); <u>Rubery v. Buth-Na-Bodhaige, Inc.</u>, 470 F.Supp. 2d 273, 276 (W.D.N.Y 2007) (whether plaintiff's duties were managerial, warranting FLSA exemption, was "intensively factual" jury question).

B.    All Potential Collective Action Members Were Wrongfully
      Treated As Exempt Until November 2006

      1.    Statements by Agents with No Personal Knowledge of the
            Work During the Time Period at Issue Should be Stricken

As set forth in the accompanying memorandum (Pl. 12(b)(1) Br. 6-7), defendants for the
most part rely on statements by employees with no personal knowledge of the relevant time
period; their declarations do not purport to describe anything other than current job duties. The
evidence already reveals meaningful differences between current practice and the situation
during the period at issue. For example, defendants argue that only the Fifth Avenue store has an
assigned loss prevention manager and operates 24 hours. (Def. Cert. Br. 7-8).  During the
relevant time period, however, Michael Oliveras was assigned as a Loss prevention Manager at
the South Street Seaport store, and that store operated 24 hours.  (Pagnotta Aff. ¶ 4; Pagnotta
Supp. Aff. ¶ 2).[8]  Further, while defendants' witnesses refer to involvement in management
meetings at Fifth Avenue (Barrett Decl. ¶ 7), such participation was not a normal part of an
Agent's duties during the relevant time frame.   (Pomales Supp. Aff. ¶¶ 6-8)   Similarly,
defendants describe a "greeter" post at the Fifth Avenue store (Def. Cert. Br. 9), but this post was
not part of the duties of loss prevention employees until late 2006 (Pomales Supp. Aff. ¶ 5).

Further, in a similar case, this Court declined to rely on 56 affiants who purported to have
"performed their jobs very differently" from the named plaintiff: "[T]he evidentiary value of the
affidavits is sharply limited by the fact that plaintiff had not yet had an opportunity . . . to depose
any of the affiants."  Damassia I, 2006 WL 2853971, at *7.  The employee affirmations

---

[8]    Class plaintiffs' affirmations, submitted as attachments to the Declaration of Debra L.
Raskin in support of the Pl. Cert. Br. are cited as "[name] Aff."  Class plaintiffs' supplemental
declarations in support of the instant opposition and the Pl. Cert. Reply are attached to the
accompanying Supplemental Affirmation of Debra L. Raskin ("Raskin Supp. Aff.") and cited as
"[name] Supp. Aff."  The Affidavit of Allen S. Kinzer, attached as Exhibit D to the Affirmation
of Stacia Maria Jones in support of the Def. 12(b)(1) Br., is cited as "Kinzer Aff."   The
declaration of Robert Ruiz attached thereto is cited as "Ruiz 12(b)(1) Decl."  The other
declarations attached thereto, which appear to be identical to those submitted in support of the
Def. Cert. Br., are cited as "[name] Decl.").  The declaration of Robert Ruiz attached to the
Affirmation of Stacia Maria Jones in support of the Def. Cert. Br. is cited as "Ruiz Cert. Decl."

defendants submit are particularly suspect given Abercrombie's firing of individuals who bring claims against it. (Pl. 12(b)(1) Br. 17)

2.   <u>Abercrombie Has Not Demonstrated that Agents Were Exempt</u>

Defendants also fail in at least two respects to meet their burden of demonstrating that no rational jury could believe Agents were exempt. <u>See</u> 29 C.F.R. § 541.200 (setting forth administrative exemption test) (Def. Cert. Br. 18). Defendants have not shown, inter alia, that a reasonable jury would be required to believe that the Agent job had as a <u>primary</u> duty the exercise of discretion and independent judgment with respect to matters of significance. This standard requires that the employee "has authority to make an independent choice, free from immediate direction or supervision with respect to matters of significance." 29 C.F.R. § 541.202(a). The exercise of discretion is <u>not</u> "the use of skill in applying techniques," nor does it refer to "decisions relating to matters of little consequence." 29 C.F.R. § 541.202(b).

Class plaintiffs introduced evidence that, during the time frame at issue, they were not permitted without manager approval to take steps to solve problems, to discipline employees, to allocate resources, or to develop store-specific programs. (<u>See</u> Pagnotta Aff. ¶¶ 10-13; Pomales Aff. ¶¶ 8-10; Davis Aff. ¶¶ 14-15; Eudelle Aff. ¶¶ 11-12) Abercrombie does not refute this evidence. Instead, relying on statements by current employees about <u>current</u> job duties, defendants suggest that some Agents purport to exercise sufficient discretion to qualify for exempt status.

Beyond failing to introduce evidence for the relevant time period, defendants fail to show that the alleged discretion these employees exercise is in accordance with Abercrombie policy for the Agent position. Tellingly, defendants do not provide critical evidence in their control. For example, class plaintiffs' state that they followed a loss prevention binder which set forth specific, non-discretionary procedures they had to follow in performing their duties. (Pagnotta Aff. ¶ 10; Davis Aff. ¶ 14; Pomales Aff. ¶ 8) Defendants admit that they have documents relevant to the Agents' duties, yet they rely on vague characterizations by current employees instead of providing the documents. (<u>See, e.g.</u>, Yount Decl. ¶ 7 ("There are documents that serve

as guides for the LPAs for reference as needed. . . .")); Hackett Decl. ¶ 6 (referring to "Target Store Program" and "Shortage Reduction Program"); Ramirez Decl. ¶ 4.h. ("The company gave us guidance on how to implement the loss prevention initiatives")).[9]  This omission alone demonstrates the need for preliminary certification and discovery on a class-wide basis before such disputed facts are determined.

Contrary to defendants' apparent belief, class plaintiffs' are not required to show that Abercrombie has procedures that direct their "every move." (See, e.g., Mathew Decl. ¶ 3) Rather, the test is whether Agents' primary duty is the exercise of independent judgment. Similarly, much of defendants' evidence is irrelevant insofar as Abercrombie claims that Agents exercise "skill" – for example in reviewing logs or monitoring cameras to detect theft. (Hackett Decl. ¶ 11; Van Dusen Decl. ¶ 7; Matthew Decl. ¶ 7; Ruiz Cert. Decl. ¶ 9)  Simply using "skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources" is not enough to qualify employees for the administrative exemption. 29 C.F.R. § 541.202(e).

Abercrombie's own evidence demonstrates that the Agents are technicians making recommendations to managers who have the discretion to act on the information, which is a classic description of a non-exempt job. Robinson-Smith v. Government Employees Ins. Co., 323 F. Supp. 2d 12, (D.D.C. 2004) (finding insurance adjusters non-exempt because the "vast majority" of their work consisted of using training and skills to assess damage value in accordance with standards that the company laid out).  Abercrombie's employees repeatedly admit that Agents must "partner" with management in carrying out their duties (Barrett Decl. ¶ 2: Ramirez Decl. ¶ 5d; Walker decl. ¶ 5; Ruiz decl. ¶ 8; Hackett Decl. ¶ 9) – and are tellingly silent on what happens when the Agent's view differs from that of management in this purported "partnership."

---

[9]     If class plaintiffs' request to strike the affirmations is granted, Abercrombie's contentions will be largely unsupported.

Similarly, defendants admit that the training Agents conduct includes, as class plaintiffs state, non-discretionary videos and topics that are required to be covered (Mathew Decl. ¶ 4.b.; Van Dusen Decl. ¶ 3.b ("Some of the training that I conduct is required of me by the company and there are specific topics that I must cover during the training.")) – and again are tellingly silent on how much of the training consists of these non-discretionary activities. As yet another example, defendants admit that an important part of the Agents' duties (again, the percentage is tellingly left unspecified) is catching "internal" cases, and admit that Agents do not have the authority to decide what happens to the employees found stealing in such cases. (See, e.g., Van Dusen Decl. ¶ 4) At this stage of the proceedings, class plaintiffs' are entitled to class-wide discovery to assess the significance of these admitted non-discretionary functions.

Finally, Abercrombie admits that the Agent position is now not exempt, and that there has been no change in the position's duties since it was treated as exempt. This fact alone establishes the requisite "modest factual showing" that the duties of the Agent position are inconsistent with exempt status. See Damassia v. DuaneReade, Inc., No 04 Civ. 8819, 2008 WL 2201469, at *4 (S.D.N.Y. May 27, 2008) (Damassia II) (Defendant's reasons for reclassifying plaintiffs from non-exempt to exempt presented factual issue common to the proposed class and relevant to the jury's consideration of the FLSA exemptions).

### 3.    Whether Agents Were Exempt Is Not an Individual Inquiry

Similarly without merit are Abercrombie's contentions that whether the Agent position was exempt varied within the region at issue. First, Abercrombie apparently contends that the Fifth Avenue store differed from other stores, and, indeed, all but admits that the Fifth Avenue position was non-exempt. Defendants admit managers assigned Fifth Avenue Agents to fixed shifts which included standing at the store entrance and monitoring security cameras, and that those Agents at all times reported to an on-site manager. (Def. Cert. Br. 9)

Class plaintiffs have made the required showing for purposes of preliminary certification that Fifth Avenue and non-Fifth Avenue Agents were similarly situated for purposes of preliminary certification during the relevant time period. Defendants' protestations

notwithstanding, their own evidence demonstrates similarity between the positions. As one of Abercrombie's witnesses admits: "[M]any of the my loss prevention duties at the South Street Seaport Store are similar to those I had at the Fifth Avenue store." (Barrett Decl. ¶ 7) That the duties allegedly are not "carried out in <u>exactly</u> the same matter" (Barrett Decl. ¶ 7 (emphasis added)), is insufficient to defeat preliminary certification.[10]

Second, Abercrombie maintains that whether Agents were exempt is an individualized inquiry, because it depends on the "personality and work ethic" of the Agent. (Def. Cert. Br. 12) This claim is not only factually wrong, but it is legally irrelevant; defendants cite no authority, and we can find none, for a "personality" test. As discussed below, the relevant inquiry is whether the duties the employer assigned the position were consistent with exempt status. <u>Damassia I</u>, 2006 WL 2853971, at *6 (despite contention that executive exemption applied, variances in "abilities and competence . . . even if true, do not undermine plaintiffs' claim that they are similarly situated with respect to their allegation that defendant's company-wide compensation policies violate FLSA's overtime requirements"). Class plaintiffs have made the required modest factual showing that Abercrombie made the assignment of Agent duties on a region- or company-wide basis.

Like other companies who unsuccessfully opposed FLSA certification, Abercrombie relies on <u>Morisky v. Public Service Electric and Gas Co.</u>, 111 F. Supp. 2d 493 (D.N.J. 2000) (Def. Cert. Br. 15, 21). As this Court held in <u>Torres v. Gristede's Operating Corp.</u>, 2006 WL 2819730, at *10 n.9 (S.D.N.Y. Sep. 29, 2006) (quoting <u>Scott v. Aetna Servs.</u>, 210 F.R.D. 261, 265 (D. Conn. 2002)), such reliance "is misplaced" because employees in <u>Morisky</u> "included a range of administrative, supervisory and technical employees." <u>Morisky</u> also involved the post-discovery application of the higher standard for collective certification, not the pre-discovery

---

[10]    Abercrombie asserts without evidentiary citation that Pagnotta performed work at non-New York City stores only as the result of a limited "blitz." (Def. Cert. Br. 23 n.23). This statement is false. (Pagnotta Supp. Aff. ¶¶ 3-4) As Abercrombie's own witnesses admit, South Street Seaport Agents are "borrowed out" to work at regional stores. (Ruiz Cert. Decl. ¶ 11.e)

preliminary certification standard. <u>Neary v. Metro. Prop. and Cas. Inc. Co.</u>, 517 F. Supp. 2d 606. 619 n.4. (D. Conn. 2007) Defendants also place substantial reliance on a Middle District of Alabama case, <u>Holt v. Rite Aid Corp.</u>, 333 F. Supp. 2d 1265 (M.D. Ala. 2004) (Def. Cert. Br. 22-23), reliance <u>Neary</u> and other cases have rejected for the same reason: that <u>Holt</u> essentially proceeded to the second more rigorous step of the FLSA certification analysis because the parties had already conducted extensive discovery. 517 F. Supp. 2d at 619 n.4.[11]

Similarly, <u>Mike v. Safeco Ins. Co. of America</u>, 274 F.Supp. 2d 216, 220 (D. Conn. 2003) (Def. Cert. Br. 22 n.21), is distinguishable because the plaintiff in that case, unlike class plaintiffs' here, argued that his individual duties, not the defendant company's policies, made his job non-exempt; because of the individual focus, preliminary certification was denied. As a later case by the same court explained, the reasoning in <u>Mike</u> does not "preclude certification of a collective action in any FLSA case where the defendant was asserting an administrative exemption defense." <u>Neary</u>, 517 F. Supp. 2d at 621-22 (claim that "all putative class members were injured by the same Metropolitan policy-designation as exempt from the FLSA" was "sufficient to meet the lenient first-tier collective action standard"); <u>see</u> <u>Summa</u>, 2008 WL 3852160, at *5 ("defendant's concern that the determination of employee status for each individual will require <u>ad hoc</u> evaluation is premature").

To the extent that discovery reveals the need for further refinement, sub-classes can be assigned at the appropriate time. As the Court held in a case defendants cite (Def. Cert. Br. 15 & n.13): "I do not find that the various job descriptions . . . render these plaintiffs <u>per se</u> dissimilar. If, at a later point in the litigation, I find that this is so, I will have the discretion to create subclasses or to dismantle the collective action." <u>Jacobs v. N.Y. Foundling Hosp.</u>, 483 F. Supp.

---

[11]      <u>See</u> <u>Gieseke v. First Horizon Home Loan Corp.</u>, 408 F.Supp. 2d 1164 (D. Kan. 2006) (holding <u>Holt</u> analysis inappropriate in pre-discovery case); <u>Morden v. T-Mobile USA, Inc.</u>, No. C05-2112RSM, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006) (same); <u>Gambo v. Lucent Technologies, Inc.</u>, No. 05 C 3701, 2005 WL 3542485, at *5 (N.D. Ill. Dec 22, 2005) (same).

2d 251, 265-66 (E.D.N.Y. 2007).  Jacobs so held even pursuant to the stricter post-discovery scrutiny. Id. at 265.

As the Court explained in another case defendants cite (Def. Cert. Br. 16), class plaintiffs "need not be identically situated to all potential class members. . . . Class treatment . . . is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of different departments at different locations." Heagney v. Eur. Amer. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (applying ADEA collective action provisions; internal quotation marks and citation omitted); see Rodolico v. Unisys Corp., 199 F.R.D. 468, 483 (E.D.N.Y. 2001) (certifying collective action in ADEA reduction in force case for plaintiffs from 49 different departments fired by different managers; plaintiffs introduced evidence from which jury could infer high-level policy of dismissing older workers that filtered down to individual decisionmakers).  The question on a preliminary certification motion is whether there is "some identifiable factual nexus which binds the named plaintiffs and the potential class members together." Heagney, 122 F.R.D. at 127.  As this Court has explained rejecting a similar attempt by a retailer to resist certification of employees with identical titles: "On defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele." Damassia I, 2006 WL 2853791, at *6 (certifying preliminary collective action despite affidavits of 56 assistant managers claiming that they performed different work than named plaintiff assistant managers).

Here, the common job title, general similarities of responsibilities, company-wide classification of Agents as exempt – all of which defendants admit – are more than enough to permit certification at this preliminary stage.  This case is thus similar to Rubery v. Buth-Na-Bodhaige, Inc., No. 04 Civ. 6337L, 2008 WL 3188769 (W.D.N.Y. Aug. 8, 2008), in which the Court granted preliminary certification, holding that, despite likely "variances" in extent and percentage of managerial duties, plaintiffs were "similarly situated with respect to their allegations that the law has been violated" because they contended that the defendant employer

denied overtime wages by classifying them as exempt when their supervisory responsibilities were insufficient to meet executive exemption. Id., at *2.

C.      Until February 2007 All Potential Collective Action Members
        Were Wrongfully Directed To Work Overtime Off the Clock

Abercrombie admits that after November 2007, Agents recorded their time in the Fifth Avenue Store by punching in at the register, and in the rest of the New York/New Jersey region by filling out timesheets. Abercrombie's contention that there was anything "individual" about this practice is without merit.

Class plaintiffs have introduced evidence that under both systems, time records were systematically falsified so that hours over forty were not documented, at least through approximately January 2007. Pagnotta stated that Abercrombie managers directed her to "adjust the punches" – not just for herself, but for all employees who had time recorded over forty hours per week. (Pagnotta Aff. ¶ 7). Davis stated and introduced documents demonstrating that, on a conference call for Agents in the entire region, all Agents – again, not just Davis – were directed not to enter their correct hours on their timesheets, but to record only hours under forty, and to submit timesheets to regional managers instead of human resources so that the records could be screened and falsified if needed. (Davis Aff. ¶¶ 10, 12 & Ex. 1). Moreover, class plaintiffs have introduced evidence that duties required of all Agents in the region regularly required overtime, such as e-mailing summaries during a period when the stores had no computers and participating in regional conference calls on Agents' days off. (Pl. 12(b)(1) Br. 4)

Thus, defendants' heavy reliance on an Eastern District of Philadelphia case is misplaced. (Def. Cert. Br. 25) In Lawrence v. City of Philadelphia, No. 03-Civ.-4009, 2004 WL 945139, at *2 (E.D. Pa. Apr. 29, 2004), the court distinguished between plaintiffs' class-wide allegations of scheduled unpaid overtime hours and potential claims by any individual plaintiff "that on any given day he or she arrived early or departed outside of their regularly scheduled hours." Similarly, Diaz v. Electronics Boutique of America, Inc., No. 04-Civ.-0840E, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17., 2005), held that a plaintiff who alleged that his manager

altered his time records had not shown that he was similarly situated to employees in other stores with different managers. The evidence here, in contrast, supports a finding of region or company-wide practices of requiring off-the-clock work and falsification of time records.

Moreover, the weight of authority holds that violations like those evidenced here warrant collective relief. As the Court in Laroque, 557 F. Supp. 2d at 353 (collecting cases, distinguishing Diaz), recently held in considering claims of inaccurate time records, "District courts in this circuit regularly grant certification under similar circumstances."[12]

Finally, the proposed collective action members face the common legal issue of whether they are entitled to overtime at a rate of time and a half, as class plaintiffs' maintain, or only half time under the "Fluctuating Work Week" method, as Abercrombie maintains. (Pl. 12(b)(1) Br. 9-10). Thus, even if individual damages were to vary, it would be far more efficient to resolve the common legal issue on a collective basis before turning to individual damage calculations. Mendez v. Radec Corp., 232 F.R.D. 78, 92-93 (W.D.N.Y. 2005) (certifying class although "[i]n almost any class action in which there are claims for damages, . . . each plaintiff must establish his entitlement to damages and the extent of those damages. That alone does not mean that a class should not be certified.").

II.    THE PROPOSED NOTICE AND DISCOVERY ARE APPROPRIATE

A.    Three Years' Notice is Appropriate

Defendants again raise inapposite factual disputes, and again do not attempt to distinguish the clear authority class plaintiffs have cited. In this instance, Abercrombie fails to discuss the myriad cases in which this Court has held that three-year notice is appropriate where,

_____

[12]    See Iriarte v. Redwood Deli and Catering, Inc., No. CV-07-5062, 2008 WL 2622929 (E.D.N.Y. Jun 30, 2008) (granting certification of off-the-clock claims); Heckler v. DK Funding, LLC, 502 F.Supp. 2d 777 (N.D. Ill., 2007) (evidence of employer "practice of editing employee time sheets to remove overtime work" warranted preliminary certification); Burch v. Qwest Communications Intern., Inc., 500 F. Supp. 2d 1181, 1187 (D. Minn. 2007) (certification appropriate where there was evidence of centralized monitoring and same tasks performed before punching in); Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 578-79 (N.D. Iowa 2005) (granting preliminary certification in case including off-the-clock claims).

as here, willfulness is disputed. (Pl. Cert. Br. 16); see Ebbert v. Nassau County, No. 05-CV-5545, 2007 WL 2295581, at *3 (E.D.N.Y. Aug. 9, 2007). Indeed, many courts have held that simply pleading willfulness is sufficient to trigger a three year limitations period. Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (plaintiffs' "well-pleaded allegations" of willfulness "sufficient to trigger the three year statute of limitations" for notice purposes); Summa, 2008 WL 3852160, at *7 (complaint's allegations of willfulness permits a three-year notice period).

Willfulness is a jury question. Though not required for the authorization of a three-year notice period, significant evidence already in the record could lead a reasonable jury to conclude that defendants' decision not to pay overtime was willful. See Kaur v. Royal Arcadia Palace, Inc., No. 05-CV-4725, 2007 WL 4591250, at *14 (E.D.N.Y. Dec. 27, 2007) (evidence plaintiffs had complained but had not received wages sufficient for jury to find willfulness); Boekemeier v. Fourth Universalist Soc'y in City of N.Y., 86 F. Supp. 2d 280, 288 (S.D.N.Y. 2000) (Def. Br. 26) (denying summary judgment on willfulness); Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1324 (11th Cir. 2007) (reversing determination that two-year statute of limitations applied in light of triable issues of fact). Otherwise, the statute of limitations continues to run for opt in plaintiffs who lose the ability to prove that the three-year limitations period is applicable. Vaicaitiene v. Partners In Care, Inc., No. 04 Civ. 9125, 2005 WL 1593053, at *7 (S.D.N.Y. July 6, 2005).

There is written evidence that plaintiff Davis raised questions about overtime. (See Davis Supp. Aff. ¶ 2 & Ex. 1) Abercrombie was and is a large, sophisticated company well aware of the FLSA, and has policies classifying employees as exempt or non-exempt. (A portion of the Employee Manual is attached as Exhibit 1 to the Raskin Decl.)). Abercrombie chose not to pay the Agents overtime until it was sued, on November 2, 2006. Cf. Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988) (Def. Cert. Br. 26) (actual notice by virtue of earlier violations, agreement to pay back pay, and promise to comply in the future made subsequent violations "unquestionably willful"). Only then did Abercrombie re-classify Agents although

there was no change in their duties.  Further, defendants admit that they dubbed Agents "Loss Prevention Supervisors" before the reclassification (Def. Cert. Br. 3), even though they did not supervise anyone, a bogus designation that further suggests an attempt to obscure non-exempt status.[13]

Defendants' suggestion that their managers' post-reclassification time sheet fraud does "not extend outside the two year limitations period" (Def. Cert. Br. 27), not only is unsupported, but also misapprehends the legal inquiry.  The willfulness inquiry concerns whether, in denying potential collective action members overtime, Abercrombie knew or showed reckless disregard that it was violating the FLSA.  (Def. Cert. Br. 26)  Abercrombie's supervisors intentionally violated the Act by demanding false time records after a lawsuit forced defendants to reclassify the Agents.  A reasonable jury could easily conclude that such evidence shows that Abercrombie's actions reflected a continuing, deliberate effort to circumvent the FLSA.[14]

Abercrombie proceeds to contradict its own claim that information outside the two-year limitations period is irrelevant by attempting to rely on affidavits of its current employees.  (Def. Cert. Br. 27)  Unlike class plaintiffs' evidence of willful acts of managers in 2007, which

_____

[13]    Defendants essentially admit to a willful violation for Agents who worked at the Fifth Avenue store.  Not only were these Agents assigned duties like standing at the door that cannot be considered consistent with exempt status (supra 9), but Abercrombie has also introduced time sheets demonstrating that defendants kept hourly records, albeit inaccurate ones, of the Fifth Avenue Agents' time.  (Ruiz 12(b)(1) Decl. Ex. 6 (Pomales and Eudelle time records dated August through November 2006))

[14]    Nor can Abercrombie rely on the DOL Opinion Letter, which was only issued in September 2006 (Def. Cert. Br. at 18), to resist notice to Agents who were misclassified in 2005, three years before the proposed notice.  Abercrombie does not argue that the Department of Labor issued this letter, which discusses a department store evidently quite different from Abercrombie's retail clothing stores, (Pl. Cert. Br. 13-14) in response to an inquiry from Abercrombie.  Further, defendants' citation of Beck v. City of Cleveland, 390 F.3d 912 (6th Cir. 2005) (Def. Cert. Br. 18), notwithstanding, the Second Circuit has followed the Supreme Court's binding holding in Christensen v. Harris County, 529 U.S. 576 (2000), that Department of Labor Opinion Letters are not entitled to deference under Chevron v. Nat'l Resources Def. Council, 467 U.S. 837 (1984).  See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y., 273 F.3d 481, 490-91 (2d Cir. 2001) (holding that EPA opinion letters and statements to Congress are not entitled to Chevron deference).

supports an inference about the company's recklessness about its violations, statements by employees with no personal knowledge of the job duties during the relevant time frame are inadmissible. Fed. R. Evid. 602.[15]  For the reasons discussed above, these inadmissible affidavits, untested by discovery, are insufficient to defeat three-year notice at this stage of the proceedings. (Supra 6)

Defendants cite three cases (Def. Cert. Br. 26 & n. 28) that are inapposite, first and foremost, because they apply the summary judgment standard after both sides have had an opportunity for full discovery, not the lower standard applicable to authorizing three-year notice.[16]  In addition, in Bowrin, defendant, a nonprofit, introduced significant evidence of compliance efforts, including periodic consultations with counsel. 417 F. Supp. 2d at at 473-75. Similarly, in Debejian the evidence showed that the company had made an effort, by contacting counsel, to ascertain if its actions violated the FLSA. 64 F. Supp. 2d at 92.  Abercrombie has introduced no such evidence.  In Gustafson, the plaintiff, after full discovery, pointed to no concrete evidence of willfulness, and relied only on his having been hired as an independent contractor to speculate that employer must have acted willfully or recklessly. 171 F. Supp. 2d at 323-24. In contrast here, it is appropriate to authorize notice to a three-year class. See Fasanelli, 516 F. Supp. 2d at 323; Iglesias-Mendoza, 239 F.R.D. at 369 (S.D.N.Y. 2007).

B.    The Form of the Proposed Notice is Appropriate

Defendants do not dispute that the proposed notice carefully mirrors a notice form that this Court approved in Lynch, 491 F. Supp. 2d at 372, Ex. A. Contrary to defendants' argument (Def. Cert. Br. 28-29), potential opt in plaintiffs should not be threatened with "potential consequences."  Former Agents can be subpoenaed to produce documents or appear for a

---

[15]    Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (time-barred events can reflect discriminatory intent with respect to conduct in the period at issue).

[16]    Bowrin v. Catholic Guardian Soc., 417 F. Supp. 2d 449, 475-76 (S.D.N.Y. 2006); Debejian v. Atl. Testing Labs., Ltd., 64 F. Supp. 2d 85, 92 (N.D.N.Y. 1992); Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 323-24 (S.D.N.Y. 2001).

deposition or trial whether or not they opt into the litigation.  Adding statements about such possibilities to the notice, therefore, is a misleading deterrent.  As for costs, another Court in this Circuit explained: "Given the remote possibility that such costs for absent class members would be other than de minimis, . . . I think such language is inappropriate.  It may have an in terrorem effect that is disproportionate to the actual likelihood that costs . . . will occur in any significant degree."  See Guzman v. VLM, Inc., No. 07-CV-1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct 11, 2007).

Similarly, the proposed notice appropriately sets forth a balanced outline of plaintiffs' principal claims – that Agents were not paid overtime for hours worked and the types of damages they claim.  The proposed notice also recites Abercrombie's principal defenses – that Agents were exempt or paid for the hours they worked.  Defendants vaguely claim that the proposed wording is prejudicial, but do not propose an alternative.  (Def. Cert. Br. 30)  Obviously, it would be inappropriate to set forth all twenty four of defendants' boilerplate affirmative defenses, particularly without setting forth plaintiffs' responses, a recitation that would become absurdly long.  Notice similar to what class plaintiffs' have proposed has repeatedly been approved by New York courts.[17]

Class plaintiffs have no objection to specifying that collective action members may obtain their own counsel.  A revised proposed notice is attached as Exhibit 1.  Defendants' other revisions should be rejected.

C.    The Proposed Discovery is Appropriate

Defendants do not dispute that the proposed discovery carefully mirrors discovery granted in other cases.  See Lynch, 491 F. Supp. 2d at 371-72.  There is substantial turnover

---

[17]    See, e.g., Lynch, 491 F. Supp. 2d at 372; Francis, 2008 WL 2588851, at *5.  The class notice in the cases that defendants cite (Def. Cert. Br. 30) specified one or two defenses, not twenty four; further, there is no indication that the plaintiffs in those cases challenged including affirmative defenses in the notice.  Belcher v. Shoney's Inc., 927 F. Supp. 2d 249, 253 (M.D. Tenn. 1996) (two affirmative defenses); Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 671 (E.D. Tenn. 2003) (one affirmative defense as to one plaintiff).

among Abercrombie's Agents, and class plaintiffs' requested additional identifying information to ensure that as many potential collective action members as possible are located, so that the collective action process achieves the maximum possible judicial efficiency, as the FLSA envisions.  The identifying information includes telephone numbers, dates of birth, and the last four digits of social security numbers only to facilitate location of Agents who may have moved since the last address they listed with Abercrombie.  Such information is particularly important for potential class members who have common names.

Contrary to defendants' implication, no one will "publish" this information.  (Def. Cert. Br. 31-32)  Class plaintiffs of course will treat this information as confidential and will negotiate with defendants a proposed protective order to that effect.  Defendants' citation of N.Y. Gen. Business Law. § 399-dd[18] is inapposite (Def. Cert. Br. 31); that statute prohibits making someone's (full) social security number available to the "general public," id. ¶ 1, and allows release "as required by state or federal law," id. ¶ 4.  Indeed, it is difficult to fathom what defendants could accomplish by withholding this information other than erecting a stumbling block to locating potential collective action members so as to impede their receiving notice of the right to opt in.  Such discovery is routinely approved.[19]

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' initial memorandum, the following relief should be granted:  (1) preliminary certification of the FLSA claims as a

---

[18]    There are four sections numbered 399-dd in this statute; the referenced section is the fourth.

[19]    See Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 60 (E.D.N.Y. 2008) (ordering "names, last known contact information, employment dates, and last four digits of the social security numbers"; rejecting objections based on "privacy, identity theft, and fraud"); Lynch, 491 F. Supp. 2d at 371-72;  Sherrill v. Sutherland Global Servs., Inc., 487 F.Supp. 2d 344, 350 (W.D.N.Y. 2007) (information including private e-mail and telephone number "is essential to identifying prospective opt-in plaintiffs"); Poreda v. Boise Cascade, L.L.C., 532 F.Supp. 2d 234, 242 (D. Mass. 2008) (ordering disclosure of e-mail addresses and telephone numbers); Underwood v. NMC Mortg. Corp., 245 F.R.D. 720, 724 (D. Kan. 2007) (same).

collective action; (2) Court-facilitated notice of the FLSA claims; and (3) expedited discovery of names and contact information for potential collective action members.

Dated: New York, New York
September 2, 2008

VLADECK, WALDMAN, ELIAS &
ENGELHARD, P.C.

By: _Delia d R_

Debra L. Raskin (DR5431)
Maia Goodell (MG8905)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300