UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHONECA DAVIS, DAWUD EUDELLE, JACLYN                08 Civ. 1859 (PKC)
PAGNOTTA, and DAVID POMALES, individually
and on behalf of all others similarly situated, and
                                                    ECF CASE
KENNETH FINGERMAN,

                              Plaintiffs,

          - against -

ABERCROMBIE & FITCH CO., ABERCROMBIE &
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT PURSUANT TO
RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE


                              VLADECK, WALDMAN, ELIAS &
                                 ENGELHARD, P.C.
                              Attorneys for Plaintiff
                              1501 Broadway, Suite 800
                              New York, New York 10036
                              (212) 403-7300

Of counsel:
    Debra L. Raskin
    Maia Goodell


253875 v1

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 5

I.      STANDARDS APPLICABLE TO THIS MOTION ............................................. 5

        A.      The Jury Must Resolve Disputed Facts Going to the Merits
              of the FLSA Claims ................................................................................. 5

        B.      Statements by Agents with No Personal Knowledge About
              the Time Period at Issue Should be Stricken .............................................. 7

II.     THE RULE 68 OFFER OF JUDGMENT FAILS TO PROFFER
       COMPLETE RELIEF ......................................................................................... 8

        A.      Class Plaintiffs Are Entitled to Time and a Half Overtime
              Damages ................................................................................................. 9

        B.      Class Plaintiffs Are Entitled to Overtime Damages for Hours
              Worked Off-the Clock ............................................................................ 14

        C.      Factual Issues Preclude A Determination that Class Plaintiffs
              Are Entitled to Only Five Hours Per Week Overtime ............................... 14

III.    AN UNACCEPTED RULE 68 OFFER DOES NOT RENDER AN
       FLSA COLLECTIVE ACTION MOOT AT THIS EARLY STAGE ................. 15

IV.    DISMISSAL OF THE FLSA CLAIMS WILL NOT END THIS
       LITIGATION ..................................................................................................... 22

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

Allen v. Bd. of Pub. Ed. for Bibb Cty.,
    495 F.3d 1306 (11th Cir. 2007) ...................................................................................14

Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.,
    436 F.3d 82 (2d Cir. 2006)................................................................................5, 6

Ambalu v. Rosenblatt,
    194 F.R.D. 451 (E.D.N.Y. 2000) ...............................................................................21

Anderson v. Ikon Office Solutions, Inc.,
    833 N.Y.S.2d 1 (1st Dep't 2007)................................................................................12

Bowens v. Atlantic Management Corp.,
    546 F. Supp. 2d 55 (E.D.N.Y. 2008) .........................................................16, 19, 20

Briggs v. Arthur T. Mott Real Estate LLC,
    No. 06-0468, 2006 WL 3314624 (E.D.N.Y. 2006) .................................8, 14, 21

Cameron-Grant v. Maxim Healthcare Servs., Inc.,
    347 F.3d 1240 (11th Cir. 2003) ...............................................................................17

Carroll v. United Compucred Coll., Inc.,
    399 F.3d 620 (6th Cir. 2004) ............................................................................17, 19

Comer v. Cisernos,
    37 F.3d 775 (2d Cir. 1994)..........................................................................17, 18, 19

Cowan v. Treetop Enter.,
    163 F. Supp. 2d 930 (M.D. Tenn. 2001).....................................................................13

Darobe v. Goodwill Industries of Greater New York and New Jersey, Inc.,
    485 F. Supp. 2d 221 (E.D.N.Y. 2007) .................................................................8, 21

Deposit Guar. Nat'l Bank of Jackson v. Roper,
    445 U.S. 326 (1980)........................................................................16, 17, 19

Dingwall v. Friedman Fisher Assoc., P.C.,
    3 F. Supp. 2d 215 (N.D.N.Y. 1998).........................................................................11

Fegley v. Higgins,
    19 F.3d 1126 (6th Cir. 1994) .................................................................................11

Geer v. Challenge Fin. Investors Corp.,
    No. 05-1109, 2006 WL 704933 (D. Kan. Mar. 14, 2006) ..............................................9, 19

Giles v. City of New York,
    41 F. Supp. 2d 308 (S.D.N.Y. 1999)...............................................................................9

Green v. Abercrombie & Fitch,
    No. 06-cv-12879-PKC (S.D.N.Y. filed Nov. 2, 2006) ....................................................4, 5

Heder v. City of Two Rivers,
    295 F.3d 777 (7th Cir. 2002) ......................................................................................12

Hoffmann-La Roche Inc. v. Sperling,
    493 U.S. 165 (1989)....................................................................................................1

Lehman v. Nakshian,
    453 U.S. 156 (1981)....................................................................................................5

Lorillard v. Pons,
    434 U.S. 575 (1978)....................................................................................................5

Louisdor v. American Telecommunications, Inc.,
    540 F. Supp. 2d 368 (E.D.N.Y. 2008) ................................................................8, 19, 20

Lucas v. Abercrombie & Fitch Co.,
    No. 07-civ-556 (S.D.N.Y. Jan. 24, 2007) .........................................................................5

MacKenzie v. Kindred Hosp. E. L.L.C.,
    276 F. Supp. 2d 1211 (M.D. Fla. 2003)...........................................................................8, 21

Mejia v. Barile,
    485 F. Supp. 2d 364 (S.D.N.Y. 2007)...............................................................................6

Moreau v. Klevenhagen,
    508 U.S. 22 (1993).....................................................................................................4

Morgan v. Account Collection Tech., LLC,
    No. 05 Civ 2131, 2006 WL 2597865 (S.D.N.Y. Sept. 6, 2006)....................................21

Novella v. Westchester County,
    No. 02 Civ. 2192, 2004 WL 3035405 (S.D.N.Y. Dec. 29, 2004)....................................18

O'Brien v. Town of Agawam,
    350 F.3d 279 (1st Cir. 2003) ......................................................................................10

Overnight Motor Transp. v. Missel,
    316 U.S. 572 (1942)..............................................................................................9, 10, 13

Pugliese v. Verizon N.Y., Inc.,
    No. 05 Civ. 4005, 20 A.D. Cases (BNA)1389, 2008 WL 2882092 (S.D.N.Y. July
    10, 2008) ................................................................................................................7

Quirk v. Baltimore County,
    895 F. Supp. 773 (D. Md. 1995).............................................................................11, 12

Rainy v. Am. Forest and Paper  Ass'n,
    26 F. Supp. 2d 82 (D.D.C. 1998) ...........................................................................12, 13

Reed v. TJX Companies, Inc.,
    No. 04-C-1247, 2004 WL 2415055 (N.D. Ill., Oct. 27, 2004) ...........................16

Reyes v. Carnival Corp.,
    No. 04-21861-civ., 2005 WL 4891058 (S.D. Fla. May 25, 2005)......................18

Rosso v. Pi Mgt. Assoc.,
    No. 02 Civ. 1702, 2005 WL 3535060 (S.D.N.Y. Dec. 23, 2005)........................9

Rubery v. Buth-Na-Bodhaige, Inc.,
    494 F. Supp. 2d 178 (N.D.N.Y. 2007)...................................................................9, 16

Schaake v. Risk Mgt. Alternatives, Inc.,
    203 F.R.D. 108 (S.D.N.Y. 2001) ...........................................................................18

Scott v. OTS Inc.,
    No. 02-cv-1950, 2006 WL 870369 (N.D. Ga. Mar. 31, 2006) ...........................13

Sosna v. Iowa,
    419 U.S. 393 (1975).................................................................................................18

Sutton v. Legal Servs. Corp.,
    11 W.H. Cases 2d 401, 2006 WL 469968 (D. C. Super. Jan. 6, 2006) ............13

Taylor v. CompUSA, Inc.,
    No. CIVA1:04CV718, 2004 WL 1660937 (N.D. Ga. July 14, 2004) ................8, 9

United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.,
    44 F.3d 1082 (2d Cir. 1995)....................................................................................7

Villatoro v. Kim Son Restaurant, L.P.,
    286 F. Supp. 2d 807 (S.D. Tex. 2003) ..................................................................16

Vogel v. Am. Kiosk Mgt.,
    371 F. Supp. 2d 122 (D. Conn. 2005)...................................................................8, 19

<u>Ward v. Bank of N.Y.</u>,
 455 F. Supp. 2d 262 (S.D.N.Y. 2006).............................................................................8, 20

<u>Weiss v. Regal Collections</u>,
 385 F.3d 337 (3d Cir. 2004)...................................................................................17, 19

<u>Yeboah v. Cent. Parking Sys.</u>,
 No. 06 Civ. 0128, 2007 WL 3232509 (E.D.N.Y. Nov. 4, 2007)......................................19

## STATUTES AND REGULATIONS

29 U.S.C. § 207(o) ...............................................................................................................4

42 U.S.C. § 1981 ................................................................................................................2

Title VII, 42 U.S.C. § 2000e <u>et seq</u>....................................................................................2

N.Y. Labor Law § 650 <u>et seq</u>...........................................................................................2

Fed. R. Civ. P. 12(b)(1) ............................................................................... <u>passim</u>

Fed. R. Civ. P. 23.......................................................................................... <u>passim</u>

Fed. R. Civ. P. 56(e) .............................................................................................6, 7

Fed. R. Civ. P.68............................................................................................ <u>passim</u>

Fed. R. Evid. 602 .........................................................................................................7

29 C.F.R. § 778.104................................................................................................15

29 C.F.R. § 778.114................................................................................................10, 13

PRELIMINARY STATEMENT

In an attempt to circumvent the judicial efficiency and access to justice that the Fair Labor Standards Act ("FLSA") provides by its collective action procedure, see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989), defendants[1] seek dismissal by mooting named plaintiffs' claims before others can receive notice and decide whether to opt in.  Class plaintiffs Shoneca Davis, Dawud Eudelle, JacLyn Pagnotta, and David Pomales (collectively "class plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion for Partial Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2]

Defendants' attempt fails for two reasons.  First, Abercrombie fails to proffer complete relief, offering class plaintiffs for overtime hours only half-time, not time and a half, until November 2006, and nothing whatsoever after that date.  Further, defendants speculate that their offer to pay five hours per week overtime was sufficient, but – unlike the employers in the cases on which defendants rely – Abercrombie cannot point to undisputed facts supporting its calculations.  Class plaintiffs have the right to a jury trial on the contested facts about their entitlement to time and a half and off-the-clock time, and as to the number of hours worked. Second, defendants' motion fails because the interest of potential collective action members, who

---

[1]     Defendants Abercrombie & Fitch Co.; Abercrombie & Fitch Stores, Inc.; and Abercrombie & Fitch Trading Co., d/b/a Abercrombie and Fitch, Abercrombie, and Hollister and Ruehl are referred to collectively as "Abercrombie" or "defendants."

[2]     Defendants' Memorandum of Law in support of that motion is cited as "Def. 12(b)(1) Br." Plaintiffs' Memorandum of Law in Support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the FLSA, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery, is cited as "Pl. Cert. Br."  Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Certification Pursuant to the FLSA, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery, is cited as "Def. Cert. Br."

have not received any payment for overtime hours, defeats defendants' contention that offering

judgment to class plaintiffs renders the FLSA claims moot.

BACKGROUND

Class plaintiffs brought this action on February 25, 2008,[3] inter alia to remedy

defendants' violations of the FLSA and the New York Minimum Wage Act ("NYMWA"), and/or

the N.Y. Labor Law § 650 et seq. with respect to overtime practices (collectively the "overtime

claims"). Those claims pertain to the period ending January 2007. (Amended Complaint ¶ 27)

Opt-in Plaintiff Shane Miller ("Miller") filed a Notice of Consent to Sue on May 1, 2008.

Defendants served Rule 68 offers of judgment for Shoneca Davis ("Davis"), Dawud Eudelle

("Eudelle"), JacLyn Pagnotta ("Pagnotta") and David Pomales ("Pomales") on April 15, 2008

and for Miller on May 6, 2008. None of the class plaintiffs accepted; Miller accepted on May

13, 2008. On July 9, 2008, pursuant to the Court's modified scheduling order filed June 3, 2008,

class plaintiffs moved for preliminary certification, court facilitated notice, and discovery for the

proposed FLSA collective action. (Pl. Cert. Br.) The state law overtime claims are brought as a

class action under Fed. R. Civ. P. 23 and class plaintiffs have not yet sought certification of that

class.

Abercrombie runs retail clothing stores in shopping malls and similar venues

throughout New Jersey, upstate New York, Long Island, and in New York City outside of

Manhattan, and it runs two large retail clothing stores in Manhattan, on Fifth Avenue and at the

South Street Seaport. Loss Prevention Agents and Loss Prevention "Supervisors" (collectively

---

[3]    Class plaintiffs and one individual plaintiff, Kenneth Fingerman, also alleged discrimination and retaliation claims under 42 U.S.C. § 1981 and various state and city equal employment laws. An Amended Complaint was filed on June 16, 2008, after the EEOC issued Notices of Right to Sue; the Amended Complaint added individual discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e et seq., for certain class plaintiffs. The amendment did not affect the overtime claims at issue in this motion.

"Agents") were employed to monitor the stores for internal and external theft. (See Def. Cert. Br. 3)

As explained in class plaintiffs' prior submission (Pl. Cert. Br. 5), Abercrombie first misclassified all Agents as "exempt," then changed the status of the Agents in November 2006 without changing their duties. At that time, Abercrombie managers began or continued to direct the Agents not to record hours in excess of 40 per week and, in some instances, management altered time records to reduce the documented hours so that overtime would not be paid. (Pl. Cert. Br. 5)

Abercrombie alleges that the Agents understood their salary to cover straight time for all hours worked (Def. 12(b)(1) Br. 2), but the facts are to the contrary. Class plaintiffs were told that they would be paid a specific annual amount for working 40 hours per week. Abercrombie regional supervisor Robert Ruiz ("Ruiz") told Davis that she would receive overtime at time and a half if she worked more than 40 hours per week. (Davis Aff. ¶ 4)[4]  For example, on September 4, 2006 – well before the alleged November reclassification – Davis wrote to her manager, Hector Graciani, and asked about being scheduled to work six eight hour shifts the week of October 1, 2006: "Is this a mistake or am I allowed to work overtime[?]  If so, you may keep the schedule as is." (Davis Supp. Aff. ¶¶ 2-3 & Ex. 1)  She was not paid overtime (see Drury Decl. Ex. 1 at ANF7), but was directed to take compensatory time the following

---

[4]      Class plaintiffs' affirmations submitted in support of the Pl. Cert. Br. are cited as "[name] Aff."  The supplemental affirmations accompanying this memorandum are cited as "[name] Supp. Aff."  The accompanying Supplemental Affirmation of Debra L. Raskin is cited as "Raskin Supp. Aff."  The Affidavit of Allen S. Kinzer, attached as Exhibit D to the Affirmation of Stacia Maria Jones ("Jones Aff.") in support of the Def. 12(b)(1) Br., is cited as "Kinzer Aff."  The declaration of Robert Ruiz attached to the Jones Aff. is cited as "Ruiz 12(b)(1) Decl."  The other declarations attached thereto, which appear to be identical to those submitted in support of the Def. Cert. Br., are cited as "[name] Decl.").  The declaration of Robert Ruiz attached to the Affirmation of Stacia Maria Jones in support of the Def. Cert. Br. is cited as "Ruiz Cert. Decl."

week. Not only was this direction improper under the FLSA,[5] but Davis, in fact, was not allowed to take the compensatory time. (Davis Supp. Aff. ¶ 3)

Defendants purported to base the Rule 68 Offers of Judgment on an average workweek of 45 hours (Kinzer Aff. Ex. 3; Def. 12(b)(1) Br. 5), but this figure is contested. Class plaintiffs introduced evidence that they were scheduled for 40 hours of shifts per week, but then were expected to perform regular work outside those shifts. Such overtime duties included e-mailing reports from home during a period when the stores had no computers for employee use and participating in regional loss prevention conference calls. (See e.g., Davis Aff. ¶ 7 (estimating that such work resulted in five hours per week of overtime)) Further, Agents were frequently required to work through their lunch hours. (Davis Supp. Aff. ¶ 4) In addition to this regular overtime, plaintiffs were sometimes required to work longer shifts - even double shifts - for events such as inventory, a floor set, or a blitz.[6] (Pomales Aff. ¶ 5; Eudelle Aff. ¶ 7; Ruiz Cert. Decl. ¶ 13.b; Pomales Supp. Aff. ¶ 2) Although plaintiffs have had no opportunity to conduct discovery on this issue, certain Abercrombie documents (plaintiffs' pay records) appear, on their face, to demonstrate an expectation that Agents routinely worked 90 hours in each two week period. (Dury Decl. Ex. 1, 5, 8, 11)

In November 2006, six Agents filed a case, Green v. Abercrombie & Fitch, No. 06-cv-12879-PKC (S.D.N.Y. filed Nov. 2, 2006), claiming similar overtime violations for Abercrombie loss prevention personnel on a nation-wide basis.[7] Steven Lucas, an Abercrombie

---

[5]    Compensatory time in lieu of time and a half payments for overtime work can be afforded only by state and local governmental entities. Moreau v. Klevenhagen, 508 U.S. 22 (1993); 29 U.S.C. § 207(o).

[6]    During a floor set, the store's entire inventory is changed. (Eudelle Aff. ¶ 7) According to defendants, in a blitz, a handful of Agents go to a store to which they are not regularly assigned to detect reasons for a high merchandise loss. (Ruiz Cert. Decl. ¶ 13.b)

[7]    A copy of the Amended Complaint in Green is attached as Exhibit 2 to Raskin Supp. Aff.

Agent who was a named plaintiff in that case, was fired on January 18, 2008; he brought a second action alleging that the firing was in retaliation for his bringing the FLSA lawsuit. Lucas v. Abercrombie & Fitch Co., No. 07-civ-556, Complaint at 4 ¶ 16 (S.D.N.Y. Jan. 24, 2007)[8] Similarly here, class plaintiff Eudelle was warned and then fired soon after he brought this lawsuit and declined defendants' Offer of Judgment. (See Def. Cert. Br. 5)  Eudelle will seek to amend the complaint to allege that the firing was retaliatory.

<u>ARGUMENT</u>

I.  STANDARDS APPLICABLE TO THIS MOTION

A.  The Jury Must Resolve Disputed Facts Going to the Merits of the FLSA Claims

Class plaintiffs have a right to a jury trial on their FLSA claims.  Lorillard v. Pons, 434 U.S. 575, 581 & n.7 (1978) (noting "well-established . . . right to a jury trial in private actions pursuant to the FLSA").  This right is grounded in the Seventh Amendment right to a civil jury.  Lehman v. Nakshian, 453 U.S. 156, 164 & n.11 (1981) ("The decisions cited by the Court in Lorillard, for the proposition that there is a right to a jury trial in FLSA actions all appear to have rested on the Seventh Amendment, not the FLSA itself.")(citation omitted)).

Thus, defendants' citation (Def. 12(b)(1) Br. 6-7) of the rule allowing the Court to resolve disputed jurisdictional facts on a Rule 12(b)(1) motion is inapposite.  The Rule 12(b)(1) inquiry cannot trump the Seventh Amendment right to a jury trial; if "fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial." Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006).

---

[8]    A copy of the complaint in Lucas is attached as Exhibit 3 to Raskin Supp. Aff.  Green and Lucas were resolved in March 2007 prior to class certification.  A copy of the Order of Dismissal (filed Mar. 27, 2007) is attached as Exhibit 4 to Raskin Supp. Aff.

As discussed below (infra 8, 14-15), this case differs from the cases defendants cite where dismissal was granted, because in those cases plaintiffs did not dispute the facts demonstrating they had been granted all relief they could hope to win through litigation. Here, in contrast, the Court would be required to resolve core factual disputes to decide the amount of overtime that class plaintiffs are due. Such disputes include, inter alia, whether there was a clear mutual understanding allowing defendants to pay only half time, instead of time and a half overtime (infra 11-12); whether class plaintiffs were required to work off-the-clock (infra 14); and whether five hours per week is sufficient to compensate each class plaintiff for all overtime hours worked. (infra 14-15)  For the Court to resolve these factual disputes that go to the merits of the FLSA claim would violate class plaintiffs' Seventh Amendment right to a jury trial.  Thus, Abercrombie's motion should be denied.

Moreover, on a Rule 12(b)(1) motion, defendants may not rely on denials or statements not based on personal knowledge to rebut class plaintiffs' evidentiary showing.  Fed. R. Civ. P. 56(e); Mejia v. Barile, 485 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (evidence outside the pleadings considered under Rule 12(b)(1) must meet standards akin to those set forth in Rule 56(e)).  As shown below, Abercrombie does not meet this burden.

In the alternative, and without waiver of the claim that such a proceeding would violate class plaintiffs' Seventh Amendment rights, because defendants' motion involves so many disputed facts, class plaintiffs respectfully request the opportunity to conduct limited discovery on jurisdictional facts and to present evidence at a hearing.  See Alliance for Environmental Renewal, 436 F.3d at 88 (district court has discretion to order a hearing on disputed jurisdictional facts).

B.    Statements by Agents with No Personal Knowledge
      About the Time Period at Issue Should be Stricken

Despite Abercrombie's superior knowledge of the identity and whereabouts of its employees, defendants introduce only one statement from a non-managerial employee who worked there during the relevant period, and one statement from a manager. (Ramirez Decl. ¶ 2; Ruiz 12(b)(1) Decl. ¶ 2)   The claims at issue concern overtime worked through January 2007 (Amended Complaint ¶ 27).   Indeed, defendants attempt to rely on a statement from a loss prevention agent employed in a store that they admit did not exist during the time period relevant to this litigation.  (Hackett Decl. ¶ 1 (stating that employee works for Gilly Hicks store); Ruiz Cert. Decl. ¶ 2 (stating that first Gilly Hicks store opened in 2008)).  In contrast, class plaintiffs, who have not yet received discovery of the names and addresses of the potential collective action members, provide four statements from employees with personal knowledge of Agent job duties and overtime hours during the relevant period. (Davis Aff., Pagnotta Aff., Eudelle Aff., Pomales Aff.)

The declarations Abercrombie submits from employees with no personal knowledge of the relevant time period are inadmissible and should be stricken.  See Fed. R. Evid. 602; Fed. R. Civ. P. 56(e); United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995) (affidavit not based on personal knowledge insufficient to rebut factual showing on summary judgment); Pugliese v. Verizon N.Y., Inc., No. 05 Civ. 4005, 20 A.D. Cases (BNA) 1389, 1394, 2008 WL 2882092 (S.D.N.Y. July 10, 2008) (striking data compilation because the Court could not determine what portions, if any, were based on personal knowledge).  Four of the declarations that defendants have submitted give employment start dates for the Abercrombie witnesses that are after February 2007.  (Barrett Decl. ¶ 1 (October 7, 2007); Hackett Decl. ¶1 (May 25, 2008); Mathew Decl. ¶ 1 (March 2008); Walker Decl. ¶ 1 (August 19, 2007)) The declarations of Joseph Gandolfo and Jamie Van Dusen state no

start date and therefore fail to establish personal knowledge.  Accordingly, all those declarations should be stricken.

II.     THE RULE 68 OFFER OF JUDGMENT
        FAILS TO PROFFER COMPLETE RELIEF

        In contrast to this case, the decisions defendants cite (Def. 12(b)(1) Br. 6-7) all reflect undisputed facts not present here:  the defendant employers offered "all that a plaintiff could hope to recover through litigation." Briggs v. Arthur T. Mott Real Estate LLC, No. 06-0468, 2006 WL 3314624, at *2 (E.D.N.Y. 2006); see Ward v. Bank of N.Y., 455 F. Supp. 2d 262, 265 (S.D.N.Y. 2006).  In Briggs, 2006 WL 3314624, at *3; and Ward, 455 F. Supp. 2d at 268-69, plaintiffs did not dispute the accuracy of the time sheets the defendant employers introduced and apparently offered no other challenges to defendants' calculations of overtime hours.  In Louisdor v. American Telecommunications, Inc., the plaintiff did not contest that the offer "represents the full amount that Plaintiff could possibly recover in this action."  540 F. Supp 2d. 368, 371 (E.D.N.Y. 2008).  In Darobe v. Goodwill Industries of Greater New York and New Jersey, Inc., after full discovery there was "no question that the Rule 68 offer made to Plaintiff exceeds any actual damages claimed." 485 F. Supp. 2d 221, 224 (E.D.N.Y. 2007).[9]

        In contrast, in cases like this one "where the amount due to plaintiff is disputed" courts have "denied a defendant's motion to dismiss on mootness grounds where the plaintiff potentially could recover more than the relief offered by the defendant." Ward, 455 F. Supp. 2d

---

[9]     See Taylor v. CompUSA, Inc., No. CIVA1:04CV718, 2004 WL 1660937, at *1 (N.D. Ga. July 14, 2004) (offer of judgment based on agreement not to contest plaintiffs' factual claims); Vogel v. Am. Kiosk Mgt., 371 F. Supp. 2d 122, 129 (D. Conn. 2005) (overtime paid in excess of maximum compensation for hours estimated in plaintiff's affidavit); MacKenzie v. Kindred Hosp. E. L.L.C., 276 F. Supp. 2d 1211, 1214 (M.D. Fla. 2003) (following discovery, plaintiff did not dispute accuracy of defendant's computation of overtime compensation due).

at 267 (collecting cases);[10] Rubery v. Buth-Na-Bodhaige, Inc., 494 F. Supp. 2d 178, 180 (N.D.N.Y. 2007) (denying motion to dismiss, noting factual disputes); Geer v. Challenge Fin. Investors Corp., No. 05-1109, 2006 WL 704933, at *3 (D. Kan. Mar. 14, 2006) (denying motion to dismiss in part because "plaintiffs argue that the [Rule 68] offers are not sufficient.")

A.    Class Plaintiffs Are Entitled to Time and a Half Overtime Damages

Defendants' offers of judgment do not include payment of time and a half for class plaintiffs' unpaid overtime hours; rather, "Abercrombie calculated the overtime on a half-time basis." (Def. 12(b)(1) Br. 6 n.11; see Kinzer Aff. Ex 3)  Defendants cite Overnight Motor Transp. v. Missel, 316 U.S. 572 (1942), which involved an employee who agreed to work an unlimited work week for a fixed salary: "[T]here was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed [weekly] wage." Id. at 581. Thus, the employee in Missel had been paid straight time for all hours worked but was still entitled to an overtime premium of one-half his hourly rate for overtime hours.  The premium was half time or 50% of the hourly rate because by agreeing to a salary for all hours worked, the employee had already been paid straight time for overtime hours.

That class plaintiffs "were paid on a salary basis" (Def. Br. 6 n.11), however, is not enough to show the type of agreement Missel contemplates. See Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) (employer has the burden of rebutting the presumption that "a weekly salary covers 40 hours"); Rosso v. Pi Mgt. Assoc., No. 02 Civ. 1702, 2005 WL 3535060, at *9 (S.D.N.Y. Dec. 23, 2005) (finding employer failed to rebut presumption that salary was for 40 hour week and, awarding time and a half overtime).  Defendants fail to

---

[10]     See Louisdor, 540 F. Supp. 2d at 373 (same); Taylor, 2004 WL 1660937, at *1 (noting that court denied prior motion to dismiss because the "parties had not yet reached a consensus on the amount of overtime pay owed to each Plaintiff").

establish the requirements for invoking the <u>Missel</u> method of calculation, so their Rule 68 offers

are inadequate.

The decision in <u>Missel</u> gave rise to the "fluctuating work week" doctrine, 29

C.F.R § 778.114, that defendants implicitly and unsuccessfully invoke here. Under that doctrine,

an employee who agrees to a fixed weekly salary, regardless of the hours worked, is treated as

having already been paid straight time for hours over 40. Accordingly, any overtime is paid at

only an additional half time hourly rate, instead of at time and a half. <u>See</u> <u>O'Brien v. Town of</u>

<u>Agawam</u>, 350 F.3d 279, 287 n.15 (1st Cir. 2003) ("[Section] 778.114 represents the Secretary of

Labor's implementation of the Supreme Court's holding in [Missel].")

The Second Circuit has not interpreted Section 778.114, but the First Circuit has

set forth the criteria for application of the fluctuating work week doctrine:

> For obvious reasons, an employer may not simply elect to pay the
> lower overtime rate under § 778.114. The regulation requires that
> four conditions be satisfied before an employer may do so:
>
> (1) the employee's hours must fluctuate from week to week;
>
> (2) the employee must receive a fixed salary that does not vary
> with the number of hours worked during the week (excluding
> overtime premiums);
>
> (3) the fixed amount must be sufficient to provide compensation
> every week at a regular rate that is at least equal to the minimum
> wage; and
>
> (4) the employer and employee must share a "clear mutual
> understanding" that the employer will pay that fixed salary
> regardless of the number of hours worked.

<u>O'Brien</u>, 350 F.3d at 288 (citing § 778.114(a)). The circuits are split on the issue of burden of

proof, <u>id.</u> at 288 n.17, and, as stated, the Second Circuit has not yet ruled on which party has the

burden. However, the only New York court that appears to have ruled on this issue has held that,

because the fluctuating work week method is an exception to the FLSA's normal requirements,

the employer bears the burden of establishing its applicability. Dingwall v. Friedman Fisher

Assoc., P.C., 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998) (cf. Pl. Cert. Br. 5 (defendants have

burden of proof that FLSA exemptions apply)).

The fluctuating workweek method does not apply to the damages calculation here

because there was no "clear, mutual understanding" that Agents' salaries covered straight time

for all hours worked. See Dingwall, 3 F. Supp. 2d at 221 (no evidence of agreement fixed salary

covered all hours worked); cf. Quirk v. Baltimore County, 895 F. Supp 773, 781, 790 (D. Md.

1995) (cited at Kinzer Aff. Ex. 3 at 2) (awarding time and a half for time worked beyond agreed

42 hours per week covered by salary).  Class plaintiffs have introduced evidence that they

understood their salary to cover only 40 hours per week, not all hours they worked. (Pomales

Aff. ¶ 4; Davis Aff. ¶ 4; Eudelle Aff. ¶ 6; Pagnotta Aff. ¶ 4)  Indeed, regional supervisor Ruiz

told Davis that she would be paid time and a half for overtime hours, and when Davis was

scheduled to work overtime she inquired – in writing – about getting paid. (Davis Supp. Aff. ¶ 2

& Ex. 1)[11]

Nor do Abercrombie's documents support defendants' assertion of a clear mutual

understanding that class plaintiffs' salaries included overtime pay.[12]  The provisions in the

---

[11]    In their cover letter to the Rule 68 offers (Kinzer Decl. Ex. 3 at 2), defendants cite various
out-of circuit cases.  To the extent that these cases apply the fluctuating workweek method,
however, they do so only after making a finding, not applicable here, that the employer and
employee had a clear mutual understanding that the salary covered all hours worked including
hours over 40.  For example, Fegley v. Higgins, 19 F.3d 1126, 1130 (6th Cir. 1994), sets forth a
district court's conclusion that when the plaintiff agreed to a job with a regular 56-hour work
week, he had also agreed that his weekly salary covered straight time for all of those hours.
Neither that finding nor the propriety of the half time overtime damages calculation was
challenged on appeal.

[12]    The personnel manual that defendants apparently contend supports their position is dated
9/06, after class plaintiffs began working for Abercrombie. (Ruiz Cert. Decl. Ex. 1)  Defendants
previously produced to class plaintiffs' counsel pages from the relevant time period which are
submitted as Exhibit 1 to Raskin Supp. Aff.

personnel manual refer to "exempt," "non-exempt," (i.e. time and a half) and "supplemental pay" (i.e. fluctuating work week) categories of employees, without mentioning Agents or stating which classification was applicable to them.  The manual also states that "Assistant Managers, Managers-in-Training, Impact Team Managers, and Trainees receive a weekly base salary for all hours worked each week.  Hours over 40 per week are paid at the Supplemental Pay rate." (Raskin Supp. Aff. Ex. 1 at ANF148, ANF151; emphasis supplied)  The checklists class plaintiffs signed reiterate that supplemental pay is for "A[ssistant] M[anager], M[anager] I[n] T[raining], Trainee only." (Ruiz Cert. Decl. Exs. 2-5, at 1)  Only after Abercrombie was sued in November 2006 for their misclassification of Agents,  did it have them sign a Supplemental Pay Acknowledgment that their salary covered all hours they worked.  (Ruiz Cert. Decl. Ex. 6-9; supra 4-5)

In addition, the fluctuating work week calculation is unavailable because class plaintiffs were not scheduled to work fewer than 40 hours per week, and because their jobs did not necessitate such irregular hours of work.  Obviously if the doctrine applied in situations where employees routinely worked 40 or more hours, the fluctuating work week provisions would be little more than a subterfuge for employers to avoid paying time and a half.  See Heder v. City of Two Rivers, 295 F.3d 777, 780 (7th Cir. 2002) (hours must fluctuate above and below 40); Anderson v. Ikon Office Solutions, Inc., 833 N.Y.S.2d 1 (1st Dep't 2007) (citing Heder in denying dismissal of NY Wage Claim); Quirk, 895 F. Supp. at 789 (fluctuating workweek method inapplicable because employees "could easily be assigned a more regular, repeating weekly shift").

Finally, it has been held that the fluctuating workweek doctrine is inapplicable to a calculation of lost wage damages because contemporaneous payment of overtime is a prerequisite for application of the fluctuating workweek method.  Rainy v. Am. Forest and Paper

Ass'n, 26 F. Supp. 2d 82, 100 (D.D.C. 1998) (emphasis supplied); see Cowan v. Treetop Enter., 163 F. Supp. 2d 930, 941 (M.D. Tenn. 2001) (same); Scott v. OTS Inc., No. 02-cv-1950, 2006 WL 870369, at *13 (N.D. Ga. Mar. 31, 2006) (same). Abercrombie cites (Def. 12(b)(1) Br. 6 n.11), an unpublished D.C. Superior Court case asserting that the "fluctuating work week method" was the correct formula to calculate unpaid overtime and that "[v]irtually every court that considered the question has so held." Sutton v. Legal Servs. Corp., 11 W.H. Cases 2d 401, 404, 2006 WL 469968 (D. C. Super. Jan. 6, 2006). For this proposition, however, the court in Sutton cites only Missel, which does not so hold.

The Supreme Court in Missel stated: "Where the employment contract is for a weekly wage with variable fluctuating hours the same method of computation [weekly salary divided by hours worked] produces the regular rate for each week." 316 U.S. at 580. The Court, however, did not define the agreement that would permit the fact-finder to determine that the employee had contracted for a fixed weekly wage, regardless of hours. Following Missel, the Department of Labor promulgated 29 C.F.R. §778.114 which defined the requirements for such a contract. (See supra 10) In addition to the clear mutual understanding between employer and employee, another required element of a contract for a fluctuating work week is, as set forth in Rainy, Cowan and Scott, that the half time overtime premium be paid when the hours above 40 are worked, not later, when the employer is sued.

Agents received no overtime whatsoever prior to November 2006. This failure without more should preclude application of the fluctuating work week doctrine. Because Abercrombie has failed to establish the elements of the fluctuating work week including the clear mutual understanding that their salaries covered hours above 40, class plaintiffs are entitled to three times the overtime pay defendants' Rule 68 offers contemplate. Accordingly, those offers are insufficient to moot the FLSA claims.

B.    Class Plaintiffs Are Entitled to Overtime
      Damages for Hours Worked Off-the Clock

Defendants' offers of judgment failed to provide for any overtime damages for the

period from November 30, 2006, through the end of January 2007.  (Kinzer Aff. Ex. 3 at 1

(noting offer calculations were based on cutoff date of November 30, 2006))  Class plaintiffs,

however, have introduced evidence of defendants' policy and practice during that period which

required them to falsify time records so as to deny Agents overtime pay illegally.  (Pl. Cert. Br.

5)  Defendants do not explain how zero could be "all that [class plaintiffs] could hope to recover

through litigation" on their off-the-clock claim.  Briggs, 2006 WL 3314624, at *2.  Thus the

failure to offer any overtime pay for that two month period renders the Rule 68 offers

insufficient.

C.    Factual Issues Preclude A Determination that Class Plaintiffs
      Are Entitled to Only Five Hours Per Week Overtime

Abercrombie's calculation of five hours per week of overtime is also not sufficient

to eliminate all justiciable controversy in this case.  Defendants point to their time records for

their estimate that Agents worked few overtime hours, but the accuracy of those time records is

plainly disputed.  (Pagnotta Aff. ¶7; Davis Aff. ¶¶ 10, 12 & Ex. 1 (management directed

alteration of time records region-wide)).  As discussed above (supra 4), there is evidence

suggesting that at least five hours per week of overtime was the norm, and that additional tasks

like conference calls, floor sets, and blitzes resulted in substantially more than five hours of

overtime in any given week.

Defendants' self-serving records purport to reflect occasional lateness, but fail to

record times the class plaintiffs arrived early, worked late, worked through lunch, or put in time

on their days off.  (Ruiz 12(b)(1) Decl. Ex. 3-6; see Davis Supp. Aff. ¶ 4)  Accordingly, these

records cannot be considered to be a dispositive reflection of class plaintiffs' hours.  See Allen v.

Bd. of Pub. Ed. for Bibb Cty., 495 F.3d 1306, 1316-17 (11th Cir. 2007) (denying summary judgment where "some employees were told not to record their overtime hours" and others "were made to take back their accurate time sheets and resubmit new time sheets that reflected their scheduled, not actual, hours.")

Defendants cite no cases in support of their position that they may deduct authorized personal, sick, and vacation time from a retroactive calculation of illegally unpaid overtime. (Def. 12(b)(1) Br. 4 n.8) In any event, such time off affects only the specific week in which it is taken. See 29 C.F.R. § 778.104 (each work week stands alone for overtime computation). Even offsetting these hours on the occasional week where Agents took such leave time does not establish the absence of a factual dispute. Such sporadic deductions do not demonstrate that the weekly average was below five hours for the months to years that class plaintiffs worked.

Finally, defendants point to conclusory statements in the affirmations of various current employees, that they now are paid for all hours worked. (Def. 12(b)(1) Br. 5) All but two of the affirmations assert no personal knowledge of the overtime hours worked during the relevant time period. Those statements therefore cannot be considered. (See supra 7-8) In short, at this early stage, it cannot be said that paying five hours per week of overtime provides "all that [class plaintiffs] could hope to recover through litigation." Briggs, 2006 WL 3314264, at *2 (Def. 12(b)(1) Br. 7).

III.    AN UNACCEPTED RULE 68 OFFER DOES NOT RENDER AN
        FLSA COLLECTIVE ACTION MOOT AT THIS EARLY STAGE

The failure to provide complete relief is more than sufficient to defeat defendants' motion.   Courts have also rejected such motions where, as here, the interests of potential collective action members are not satisfied by the defendant employers' offers. A pending or even a potential motion for conditional certification in and of itself has been held sufficient to

defeat a motion for dismissal on mootness grounds. <u>Bowens v. Atlantic Management Corp.</u>, 546 F. Supp. 2d 55, 75-76 (E.D.N.Y. 2008); <u>Rubery</u>, 494 F. Supp. 2d at 181; <u>Reed v. TJX Companies, Inc.</u>, No. 04-C-1247, 2004 WL 2415055, at *3 (N.D. Ill., Oct. 27, 2004) ("Of particular concern . . . is the ability of defendant purposefully to moot the [FLSA] class action complaint between the time of filing and class notification or certification"); <u>cf.</u> <u>Villatoro v. Kim Son Restaurant, L.P.</u>, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) ("Plaintiff's rejection of a Rule 68 offer is not relevant to the issue presently before the Court, namely, whether there are individuals similarly situated to her in regard to underpayment of wages."). In this case, there is clear evidence that others want to join the action, because even at this pre-notice stage a plaintiff has opted in.

       The Supreme Court has considered a question closely related to the one at issue here, namely, whether an unaccepted tender of settlement to a Rule 23 class representative could moot a class action, so that there was no jurisdiction to consider an appeal of the class certification denial. The Court held the rejected offer could not:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

<u>Deposit Guar. Nat'l Bank of Jackson v. Roper</u>, 445 U.S. 326, 339 (1980).

       In a concurring opinion, Justice Rehnquist explained the basis for holding that the case was not moot even though the class had not yet been certified:

> The distinguishing feature here is that the defendant has made an <u>unaccepted</u> offer of tender in settlement of the individual putative representative's claim. <u>The action is moot in the Art. III sense only if this Court adopts a rule that an individual seeking to proceed as a class representative is required to accept a tender of only his individual claims.</u> So long as the court does not require such

> acceptance, the individual is required to prove his case, and the requisite Art. III adversity continues. Acceptance need not be mandated under our precedents since the defendant has not offered all that has been requested in the complaint (i.e., relief for the class). . . .

Id. at 341 (1980) (Rehnquist, J., concurring) (second emphasis added); see Weiss v. Regal

Collections, 385 F.3d 337, 345 (3d Cir. 2004) (applying Roper to hold that uncertified Rule 23

class action was not rendered moot by Rule 68 offer of judgment).

Thus, defendants' motion is properly understood as asking the court to compel

acceptance of their Rule 68 offer.[13] Such an action is improper where, as here, there has been no

discovery or notice to the potential collective action members.  As the Sixth Circuit has

explained: "If a tender made to the individual plaintiff while the motion for certification is

pending could prevent courts from ever reaching the class action issues, that opportunity is at the

mercy of a defendant, even in cases where a class action would be most clearly appropriate."

Carroll v. United Compucred Coll., Inc., 399 F.3d 620, 625 (6th Cir. 2004) (citation and internal

quotation marks omitted) (holding that Rule 68 offer of judgment does not moot case with

pending class certification).

The Second Circuit has also explained that "special problems associated with

class action mootness" counsel against allowing defendants to render uncertified classes moot.

Comer v. Cisernos, 37 F.3d 775, 798 (2d Cir. 1994).  In light of these concerns, courts have

applied several exceptions to the mootness doctrine in the uncertified Rule 23 class context.

First,

> [T]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to

---

[13]    Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240 (11th Cir. 2003) (Def. 12(b)(1) Br. 9), is thus inapposite because it involved an accepted settlement.

"relate back" to the filing of the complaint may depend upon the circumstances of the particular case. . . .

Sosna v. Iowa, 419 U.S. 393, 402 n.11 (1975); see Comer, 37 F.3d 798; Novella v. Westchester County, No. 02 Civ. 2192, 2004 WL 3035405, at *4 (S.D.N.Y. Dec. 29, 2004).  In an FLSA collective action, relation back is arguably appropriate where, as here, the offers of judgment were made before plaintiffs had a reasonable opportunity to notify all similarly situated employees.  Reyes v. Carnival Corp., No. 04-21861-civ., 2005 WL 4891058, at * 4 (S.D. Fla. May 25, 2005) ("Permitting a defendant to evade a collective action by making an offer of judgment at the earliest possible time defeats the purpose of the collective action mechanism.")

In addition to the relation back doctrine, courts in Rule 23 cases apply the "voluntary cessation" and "capable of repetition yet evading review" exceptions. Comer, 37 F.3d at 798. Under the voluntary cessation doctrine, an action cannot be made moot by voluntary cessation of illegal activity unless defendants carry the "very heavy burden of demonstrating (1) with assurance that there is no reasonable expectation that the conduct will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. at 800 (citation omitted).  Under the capable of repetition yet evading review doctrine, for transitory claims where plaintiffs have not delayed in seeking certification, class certification for jurisdictional purposes can be deemed to relate back to the original filing. Id. at 799; Schaake v. Risk Mgt. Alternatives, Inc., 203 F.R.D. 108, 112 (S.D.N.Y. 2001) (denying motion to dismiss where Rule 68 offer of judgment was made 32 days after complaint was filed and before Rule 23 certification motion; refusing to "allow[ ] a defendant to avoid liability for class wide relief . . . by the mere service of a Rule 68 offer at the outset of a case.")  Class plaintiffs' claims are at the intersection of these doctrines:  because of defendants' use of the Rule 68 procedure to pick off class representatives, the FLSA claims of class plaintiffs and other Agents are transitory.

Defendants suggest (Def. 12(b)(1) Br. 9) that FLSA collective actions are different from Rule 23 class actions because potential members must opt into the FLSA collective action to have their interests represented, whereas class members are represented in a Rule 23 class unless they opt out. See e.g., Louisdor, 540 F. Supp. 2d at 372-73, Vogel, 371 F. Supp. 2d at 128. In the Rule 23 context, it is well established that "class certification will preserve an otherwise moot claim." Comer, 37 F.3d at 798. The members of a certified class have a live interest even if the class representatives no longer do. The issue in Roper and Comer, however, was whether defendants could moot an uncertified class. See Carroll, 399 F.3d at 625 (exception for class with certification motion pending). The interest that made the controversy a live one was the interest of individuals who would potentially become part of the Rule 23 class – very similar to the interest of individuals who could decide to opt into this action after they receive notice. In other words, the applicable analogy is not to the certified Rule 23 class, but to an uncertified Rule 23 class, where, as here, the interests of potential parties who are not yet part of the action preclude the case from becoming moot.

Allowing defendants to "pick off" class representatives by forcing them to accept offers of judgment frustrates the purposes not only of class actions generally, but of the FLSA collective action procedure in particular: First, such a result precludes redress of wrongs "where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits." Bowens, 546 F. Supp. 2d at 80 (quoting Yeboah v. Cent. Parking Sys., No. 06 Civ. 0128, 2007 WL 3232509, at *3 (E.D.N.Y. Nov. 4, 2007) (internal quotation marks and alterations omitted)) Second, such a result "would invite the waste of judicial resources by stimulating successive suits brought by others claiming aggrievement." Id.; see Weiss, 385 F.3d at 345; Geer, 2006 WL 704933, at *3 ("[T]his court is reluctant to allow defendants to bar the courtroom doors so early in the [uncertified FLSA class] litigation.").

Those concerns are acute here. Defendants have twice fired individuals who brought this overtime claim against them, which underscores the likelihood of an "attempt to circumvent the FLSA." Bowens, 546 F. Supp. 2d at 80. There are a significant number of Agents with claims, that, while not insubstantial to them, are small enough to make individual lawsuits impractical. Finally, the risk of successive suits is not hypothetical, but demonstrated by an earlier case in which the named plaintiffs were "picked off" prior to conditional certification.

Contrary to defendants' assertion (Def. 12(b)(1) Br. 11), the cases they cite do not all "dismiss[]" the concerns associated with such a procedure. Instead, the decisions conclude that, under circumstances different from those presented here, it was appropriate for the courts to compel acceptance of the Rule 68 offer. This Court in Ward stated that such concerns "do give this Court some pause," but did not control there because the lone plaintiff's damages were definite, undisputed and minimal; the defendant employer's offer far exceeded what the plaintiff could recover at trial; no certification motion was pending; and no one had opted in to the action after more than a year. 455 F. Supp. 2d at 269-70. Similarly, the court in Louisdor explained: "In some cases, it may be proper for a court to deny a defendant's motion to dismiss where it is clear the defendant is using a Rule 68 offer of judgment for the purpose of defeating the plaintiff's right to bring an FLSA collective action . . . ." 540 F. Supp. 2d at 374 (holding that the "instant action is not such a case [because i]n the two years that Plaintiff's action has been pending, there appears to have been no indication that anyone will join in Plaintiff's suit. . . .").

Here, in contrast, there are four named plaintiffs and another employee has already opted in; at this early stage notice has not been sent and discovery on the identities of

other class members has not been conducted.[14]  That the opt-in plaintiff accepted Abercrombie's

Rule 68 offer does not negate the demonstrated interest of individuals in addition to the class

plaintiffs in recovering for Abercrombie's overtime violations.  The interests of those individuals

weigh against judicially mandated acceptance of the Rule 68 offers to class plaintiffs, and the

case therefore should not be held to be moot.

The remaining cases Abercrombie cites (Def. 12(b)(1) Br. 9-11) are also

inapposite.  In Darobe, the court stated that "dismissal is ordered because the [sole] FLSA

plaintiff has identified no other class members." Darobe, 485 F. Supp. 2d at 224 (emphasis

added) (no opt-ins after complete discovery).  Similarly, in Briggs, the Court stated that the

concern that defendants' procedure "renders the congressionally chosen method for combating

the failure to pay overtime a nullity" failed "in this case," inter alia because there, unlike here,

there was no pending motion to certify.  2006 WL 3314624, at *3.  Thus, unaccepted offers of

judgment to only the class plaintiffs at this early stage of the proceedings should not moot this

action.[15]

---

[14]    Defendants' invocation of the six-month period since the complaint was filed (Def.
12(b)(1) Br. 1) is disingenuous.  Class plaintiffs at the initial pretrial conference requested
permission to move for preliminary certification, notice, and discovery of potential collective
action members.  The only delay was an agreed one-month postponement for settlement
discussions.  See Stipulation and Order, June 3, 2008 (a copy is attached as Exhibit 5 to Raskin
Supp. Aff.)  See Morgan v. Account Collection Tech., LLC, No. 05 Civ. 2131, 2006 WL
2597865, at *708 (S.D.N.Y. Sept. 6, 2006) (Rule 68 offer to named plaintiff did not moot class
action where named plaintiff waited eleven months to file Rule 23 certification motion); compare
Ambalu v. Rosenblatt, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) (Def. 12(b)(1) Br. 8) (no motion for
class certification submitted in case filed 17 months before dismissal pursuant to Rule 68 offer).

[15]    Defendants' motion to dismiss fails for the reasons discussed.  However, if the Court
disagrees and grants the motion, judgment should be entered requiring defendants to pay the full
amounts of the Rule 68 offers, including reasonable attorneys' fees and costs pursuant to an
application that will be submitted.  See MacKenzie, 276 F. Supp. 2d at 1219 (so ordering, noting
analogy to default judgment).

IV.    DISMISSAL OF THE FLSA CLAIMS WILL NOT END THIS LITIGATION

Defendants also argue that if their motion to dismiss class plaintiffs' FLSA claims is granted, class plaintiffs' New York Labor Law overtime claims should be dismissed because supplemental jurisdiction is no longer appropriate. Abercrombie contends that class plaintiffs' remaining discrimination and retaliation claims are not related to the overtime claims. (Def. 12(b)(1) Br. 12-13) As defendants apparently admit (Def. 12(b)(1) Br. 13), if the Court grants their motion, the state claims must be dismissed without prejudice, so that class plaintiffs may file these valid state claims in state court.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Partial Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure should be denied.

Dated: New York, New York
       September 2, 2008

                              VLADECK, WALDMAN, ELIAS &
                              ENGELHARD, P.C.


                              By: _____
                                  Debra L. Raskin (DR 5431)
                                  Maia Goodell (MG 8905)
                                  Attorneys for Plaintiff
                                  1501 Broadway, Suite 800
                                  New York, New York 10036
                                  (212) 403-7300

253875 v1

22