UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
SHONECA DAVIS, DAWUD EUDELLE, JACLYN
PAGNOTTA, and DAVID POMALES, individually
and on behalf of all others similarly situated, and      08 Civ 01859

KENNETH FINGERMAN,                                        ECF CASE

                Plaintiffs,                CLASS ACTION

      - against -                                   SUPPLEMENTAL
                                                     AFFIRMATION OF
ABERCROMBIE & FITCH CO., ABERCROMBIE &                    DAVID POMALES
FITCH STORES, INC., ABERCROMBIE & FITCH
TRADING CO., d/b/a Abercrombie and Fitch,
Abercrombie, and Hollister and Ruehl,

                Defendants.
---------------------------------------------------x

      DAVID POMALES, under penalty of perjury, affirms and states as follows:

      1.     I am a plaintiff in the above-captioned case and I submit this affirmation in further support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery, and in opposition to Defendants' Motion for Partial Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

      2.     Several times when I worked at South Street Seaport, I was assigned to work at defendants' other stores, for a "blitz," inventory, or similar special assignment. These assignments involved overtime and sometimes required me to work hours in addition to an eight hour shift. For example, on one occasion, I worked an eight hour shift at South Street Seaport and then was asked to travel to another store and work there, which resulted in my working from 8:00 a.m. to about 1:00 a.m. the following morning.

252067 v1

3. Although such assignments almost always meant that I worked more than forty hours in the week, I was not paid overtime.

4. I observed other Abercrombie loss prevention employees were also assigned to work on those special assignments.

5. The "greeter" post was not added to the loss prevention duties at Fifth Avenue until late 2006. Before that, the store hired employees who worked as dedicated greeters.

6. Although I have occasionally attended management meetings at Fifth Avenue to fill in for absent managers, it was not a normal part of the duties of non-management loss prevention personnel to attend those meetings in 2005, 2006, or 2007.

7. In fact, in 2006, loss prevention manager Matt Tracy, who was then assigned to the Fifth Avenue store, told me that regional manager Robert Ruiz wanted only managers to attend management meetings at Fifth Avenue, not Loss Prevention Supervisors or Agents.

8. In approximately 2008, a new Loss Prevention Manager began to ask all Loss Prevention Agents at Fifth Avenue to attend management meetings. This was the first time since I worked at Fifth Avenue that all non-management loss prevention employees were asked to attend those meetings regularly.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 8/31 in 2008.

David Pomales